620 A.2d 30

**Kenneth J. BOTSKO, Joseph Botsko, Appellees,**

v.

**DONEGAL MUTUAL INSURANCE CO., Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 11, 1992.

Filed Feb. 16, 1993.

---

42

Rick Long, Wyomissing, for appellant.

Charles M. Miller, Frackville, for appellees.

Richard C. Angino, Harrisburg, for PA Trial Lawyers Ass'n, amicus curiae.

Before ROWLEY, President Judge, and WIEAND and HUDOCK, JJ.

WIEAND, Judge:

This is an appeal from a summary judgment entered by the trial court in an action for declaratory judgment to interpret coverage provided by a policy of automobile insurance. We are asked to determine whether the trial court correctly held summarily and as a matter of law that Donegal Mutual Insurance Co. had improperly issued a policy having limited underinsured motorist coverage to Kenneth Botsko without

his waiver of the requirement of the Pennsylvania Motor Vehicle Financial Responsibility Law that the policy contain uninsured and underinsured motorist coverage in the amount of liability coverage for bodily injury.

At issue is the language of the statute appearing in pertinent part at 75 Pa.C.S. §§ 1731(a), 1734 and 1791 as follows:

### § 1731. Availability, scope and amount of coverage

(a) **Mandatory offering.**—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage)....

### § 1734. Request for lower limits of coverage

A named insured may request in writing the issuance of coverages under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury.

### § 1791. Notice of available benefits and limits

It shall be presumed that the insured has been advised of the benefits and limits available under this chapter provided the following notice in bold print of at least ten-point type is given to the applicant at the time of application for original coverage, and no other notice or rejection shall be required:

### IMPORTANT NOTICE

Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits for you, your spouse or other relatives or minors in your custody or in the custody of your relatives, residing in your household, occupants of your motor vehicle or persons struck by your motor vehicle:

. . . .

(6) Uninsured, underinsured and bodily injury liability coverage up to at least $100,000 because of injury to one

person in any one accident and up to at least $300,000 because of injury to two or more persons in any one accident or, at the option of the insurer, up to at least $300,000 in a single limit for these coverages, except for policies issued under the Assigned Risk Plan. . . .

> Additionally, insurers may offer higher benefit levels than those enumerated above as well as additional benefits. However, an insured may elect to purchase lower benefit levels than those enumerated above.

> Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected.

The policy issued by Donegal to Kenneth Botsko in the instant case provided liability coverage for up to three hundred thousand ($300,000) dollars. Uninsured and underinsured motorist coverage, however, was limited to thirty-five thousand ($35,000) dollars. This was in violation of the provisions of the Motor Vehicle Financial Responsibility Law unless the insured was first advised of the full coverage available to him and affirmatively waived such protection in favor of lesser coverage.

In fact, the insured had not been given and had not signed the important notice required by 75 Pa.C.S. § 1791 by which he could have waived the statutory requirement and opted for a lesser coverage. As to this fact there is no dispute. What, then, is the effect of such failure?

In *Byers v. Amerisure Ins. Co.*, 745 F.Supp. 1073 (E.D.Pa.1990), *affirmed*, 935 F.2d 1280 (3rd Cir.1991), the insurer had also failed to give to its insured the notice of available benefits required by 75 Pa.C.S. § 1791. It argued, nevertheless, that its insureds had waived the statutorily required coverage by signing an application for lesser coverage without objection. The court held that an insured's signature on the required notice will establish a conclusive presumption that he or she has actual knowledge of the coverage available. See: *Shipe v. Allstate Ins. Co.*, 791

F.Supp. 109, 111 (M.D.Pa.1992). If the insured voluntarily signs the waiver, he or she will not thereafter be heard to contend otherwise. *Prudential Property and Cas. Ins. Co. v. Pendleton*, 858 F.2d 930, 936 (3d Cir.1988). See also: *The Cincinnati Ins. Co. v. Herr Signal & Lighting Co., Inc.*, 757 F.Supp. 490 (M.D.Pa.1991). However,

[i]f the insurer does not follow § 1791 then it must establish waiver under the principles enunciated in *Johnson v. Concord Mut. Ins. Co.*, 450 Pa. 614, 300 A.2d 61 (1973), where the Supreme Court established that a waiver of the statutory right to certain levels of uninsured motorists coverage must be "[a]ffirmatively expressed in writing by the insured," which must evidence "[a]n express agreement or acquiescence on the part of the insured to delete or relinquish this protection. The statutory mandate may be complied with only by including uninsured motorists coverage or by obtaining an affirmatively expressed rejection in writing from the insured. Nothing less will satisfy the statutory obligation." 450 Pa. at 621, 300 A.2d at 65. *Johnson* places the burden of proof to establish waiver on the insurer. 450 Pa. at 620, 300 A.2d at 65; *accord Pendleton*, 858 F.2d at 935.

*Byers v. Amerisure Ins. Co., supra* at 1076 (footnote omitted). See also: *Nationwide Ins. Co. v. Resseguie*, 782 F.Supp. 292 (M.D.Pa.1992), *affirmed in part, reversed in part*, 980 F.2d 226 (3d Cir.1992). Cf. *Lambert v. McClure*, 407 Pa.Super. 257, 595 A.2d 629 (1991); *Boyce v. St. Paul Property and Liability Ins. Co.*, 421 Pa.Super. 582, 618 A.2d 962 (1992).

■ In the instant case, Kenneth Botsko purchased automobile insurance from Lawrence Domalakes, t/a Frackville Insurance Agency. He was given a copy of the policy which had previously been issued to his father, Joseph Botsko, and apparently took it home with him. When he later signed an application for insurance coverage, he requested the same coverage which had been issued to his father. The father's policy provided liability coverage of three hundred thousand ($300,000) dollars but uninsured and underinsured motorist benefits of only thirty-five thousand ($35,000) dollars. Doma-

lakes could not recall the specific conversation he had with Kenneth Botsko. When the policy was ordered from and issued by Donegal, however, it provided for the same coverage which had been issued to the father. The policy was renewed annually and the premiums paid until October 13, 1989, when the vehicle which Kenneth Botsko was operating was struck head on by a vehicle being driven by Violet P. Guers. Botsko settled his claim for bodily injury against Guers, with Donegal's consent, for fifty thousand ($50,000) dollars, the limits of liability under a policy of insurance which had been issued on the Guers vehicle by Travelers Insurance Co. Thereafter, Kenneth Botsko commenced the present action for a declaratory judgment determining that the maximum coverage for underinsured motorist coverage provided by Donegal policies issued on each of two vehicles owned by the insured was three hundred thousand ($300,000) dollars.

Under the law discussed in *Byers v. Amerisure, supra,* which we believe to be a sound analysis, the trial court in this case correctly determined that Donegal could not meet its burden of showing that Kenneth Botsko had waived the amount of underinsured motorist coverage required by the statute. There is no evidence that Kenneth Botsko was advised of the coverage mandated by statute and thereafter waived it in favor of lesser coverage.

The insurer contends that the enhanced coverage was waived when the applicant expressly requested uninsured and underinsured coverage for thirty-five thousand ($35,000) dollars and paid the premium therefor. A similar argument was made and rejected in *Byers v. Amerisure Ins. Co., supra,* where the court said:

> Although [the insured] signed the policy application, there is no evidence before this court that he was shown the language mandated by § 1791. Nor is there any other evidence that at the time of application [the insurers] offered the [insureds] an opportunity to purchase uninsured and underinsured coverage equal to the public liability coverage for bodily injury. There certainly is no evidence that the [insureds] made a conscious decision to reject the enhanced

coverage which was available to them. Because there is no evidence that the [insureds] made the knowing, unequivocal waiver required by *Johnson,* I decline to find that the [insureds] waived their rights under the MVFRL.
*Id.* at 1076.

■ The apparent absence of waiver is not changed by the fact that the insured paid the same annual premium for several years thereafter. See: *Nationwide Ins. Co. v. Resseguie, supra* at 294. The amount of coverage is made mandatory by the statute. It can be waived in favor of lesser coverage only after the insured has been made aware of the coverage that is available. Without such information, a knowing and intelligent waiver cannot be made. Here, there is no evidence that the insured was ever made aware of the coverage available to him. In the absence thereof, he could not knowingly and intelligently waive the coverage mandated by statute.

The insurer also contends that the insured is estopped from disputing the amount of his coverage because he had a duty to read the terms of his policy and, if the coverage was unsatisfactory, reject the same and request proper coverage. Although such a principle was adopted and followed by the Supreme Court in *Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300, 469 A.2d 563 (1983), the Court was there considering general liability insurance, an area of the law less heavily regulated by statute than motor vehicle insurance. Here, as the Court held in *Johnson v. Concord Mutual Ins. Co., supra,* "[b]ecause uninsured motorist coverage has been legislatively declared to be a matter of public policy, a deletion of coverage is not to be determined by reference to traditional rules of waiver and estoppel." *Id.,* 450 Pa. at 622, 300 A.2d at 66.

■ Here, the insurer could not establish that the insured had received the important notice of uninsured and underinsured motorist benefits pursuant to section 1791 of the statute. It also could not show that the insured had elected to reject mandatory coverage with full knowledge of its availability. Without a written request for the lower coverage or an

admission by the insured that he had had actual knowledge of the coverage mandated by statute when he applied for lesser coverage and paid premiums therefor, the insurer could not alter the coverage mandated by statute. To lower the limits required by statute, the insurer must have required a written authorization signed by the insured. *Nationwide Ins. Co. v. Resseguie, supra.*

Appellant's reliance upon the decision in *Groff v. Continental Ins. Co.,* 741 F.Supp. 541 (E.D.Pa.1990), is misplaced. There, the insureds had initially obtained liability coverage in the amount of one million ($1,000,000) dollars, with underinsured motorist coverage in like amount. Later, however, the husband insured made a written request for underinsured motorist coverage in the amount of thirty-five thousand ($35,-000) dollars. Still later, a portion of the original premium was refunded to and accepted by the insureds. The insureds were also notified in writing via endorsement that their underinsured motorist coverage had been limited to thirty-five thousand ($35,000) dollars. There was also testimony that the husband insured did not generally sign documents without knowing what he was signing. Under these circumstances, the trial court found as fact that the insureds had made a knowing and intelligent decision to purchase and pay for smaller coverage than that mandated by the statute. These facts serve to distinguish *Groff* from the instant case.

The facts also distinguish the decision in *Shipe v. Allstate Ins. Co., supra.* There, the factual scenario was described by the trial court as follows:

At his deposition, [the insured] testified that he was "knowledgeable of what insurance [he] was purchasing". He specifically chose to purchase the coverage requested on the application and was fully aware of the extent of the coverage. He understood that the underinsured motorist coverage was intended to protect him in the event of an accident or claim involving an underinsured motorist. In addition, while he believed that the underinsurance coverage he received was the common coverage that went with his application, he was sure that the agent told him that he was

entitled to purchase more underinsurance coverage. Finally, he specifically stated that he applied for insurance "to provide the coverages that [he] wanted that [he] had experienced on the previous insurance policies at a lower premium".

[The insured] signed the application and reviewed the policy when he received it in the mail. It was also his common practice to review the Declaration sheets renewing his policy to confirm that the coverage was that which he had requested and to determine that the premium was correct.

*Id.*, 791 F.Supp. at 110.

■ Here, it is clear that the insured was not given the written notice required by 75 Pa.C.S. § 1791. It is equally clear that he did not waive, in writing, the underinsured motorist coverage which the insurer was required to provide by statute. The insured's depositions are that he was unaware that increased coverage was available and that his application was based on the policy which had been issued to his father, a copy of which had been given to him to examine. The broker's testimony was that he could not recall that the insured had ever been notified that underinsured coverage was available in the same amount as the liability coverage provided by the policy. Under these circumstances the trial court could conclude that, as a matter of law, the right to coverage as mandated by statute had not been waived. A party's "lack of memory or knowledge alone is insufficient to create a genuine issue of material fact as to whether [an insured] made a knowing and intelligent election for lower uninsured motorist coverage . . . [and t]herefore the evidence presented by [the insurer] on this issue remains uncontradicted". *Groff v. Continental Ins. Co.*, *supra* at 548.

To summarize, Donegal failed to give the notice required by statute regarding the amount of underinsurance available for purchase by the insured. Moreover, the amount of coverage to be provided by the insurer had not been waived in writing by the insured. Finally, the evidence disclosed no basis for a factual finding of waiver under the Supreme Court decision in

*Johnson v. Concord Mutual Ins. Co., supra.* Under these circumstances, the trial court did not err when it entered summary judgment in favor of the named insured for the coverage mandated by statute.

Judgment affirmed.