**NATIONWIDE MUTUAL INSURANCE
COMPANY, Appellant,**

v.

**James and Marian HEINTZ, Appellees.**

Superior Court of Pennsylvania.

Argued March 19, 2002.

Filed June 19, 2002.

Reargument Denied Aug. 26, 2002.

Lauren Dobrowalski, Kingston, for appellant.

James P. Harris, Wilkes-Barre, for appellee.

Before FORD ELLIOTT, LALLY-GREEN, and CAVANAUGH, JJ.

LALLY-GREEN, J.

¶ 1 Appellant, Nationwide Mutual Insurance Company, appeals from the judgment entered on June 15, 2001, in favor of Dr. James Heintz and Marian Heintz (the Heintzes). The trial court entered judgment after denying Appellant's "Petition to Vacate, Modify, or Correct" an arbitration award. We vacate the judgment and remand for further proceedings.

¶ 2 The factual and procedural history of the case is as follows. On September 15, 1998, Dr. Heintz, an orthopedic surgeon, was riding a bicycle when he was hit head-on by a Ford Explorer. Dr. Heintz suffered severe and permanent injuries.

¶ 3 Dr. Heintz was a named insured on a Nationwide policy, #58 37 C 664196 (the Policy). The Policy provided bodily injury liability coverage of $300,000.00 per person/$300,000.00 per occurrence. According to the Declarations Page of the Policy, the Policy provided stacked underinsured motorist (UIM) coverage of $50,000.00 per person/$100,000.00 per occurrence.[1] At

---

1. The Policy also provided uninsured motorist (UM) coverage, which is not at issue in this

the time of the accident, the Heintzes had three vehicles on the Policy.

¶ 4 The underlying tortfeasor held a policy with coverage limits of $100,000.00. The Heintzes received the full $100,000.00. Nationwide contended that the maximum it would pay under its own Policy was $150,000.00 (*i.e.*, $50,000.00 in UIM benefits × 3 vehicles = $150,000.00). Nationwide paid this "undisputed" amount to the Heintzes.

¶ 5 The Heintzes contended that the maximum amount payable under the Policy was not $150,000.00, but rather $900,000.00 (*i.e.*, $300,000.00 in UIM benefits × 3 vehicles). Specifically, the Heintzes argued that they did not knowingly and intelligently reduce their UIM benefits to $150,000.00; therefore, the policy should be reformed so that UIM benefits equal the existing bodily injury coverage.

¶ 6 The case proceeded to arbitration under the Arbitration Act of 1927. The arbitrators held a hearing on September 6–7, 2000. The arbitrators agreed with the Heintzes, reasoning as follows:

There was no Section 1791 [2] 'Important Notice' sent by Nationwide [to] Mr. James Heintz and Mrs. Marian Heintz.

case.

2. Section 1791 of the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S.A. §§ 1701 *et seq.* Section 1791 reads as follows:

§ 1791. Notice of available benefits and limits

It shall be presumed that the insured has been advised of the benefits and limits available under this chapter provided the following notice in bold print of at least ten-point type is given to the applicant at the time of application for original coverage, and no other notice or rejection shall be required:

IMPORTANT NOTICE

Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits to you, your spouse or other relatives or minors in your custody or in the custody of your relatives, residing in your household, occupants of your motor vehicle or persons struck by your motor vehicle: (1) Medical benefits, up to at least $ 100,-000. (1.1) Extraordinary medical benefits, from $ 100,000 to $ 1,100,000 which may be offered in increments of $ 100,000. (2) Income loss benefits, up to at least $ 2,500 per month up to a maximum benefit of at least $ 50,000. (3) Accidental death benefits, up to at least $ 25,000. (4) Funeral benefits, $ 2,500.

(5) As an alternative to paragraphs (1), (2), (3) and (4), a combination benefit, up to at least $ 177,500 of benefits in the aggregate or benefits payable up to three years from the date of the accident, whichever occurs first, subject to a limit on accidental death benefits of up to $ 25,000 and a limit on funeral benefits of $ 2,500, provided that nothing contained in this subsection shall be construed to limit, reduce, modify or change the provisions of section 1715(d) (relating to availability of adequate limits). (6) Uninsured, underinsured and bodily injury liability coverage up to at least $ 100,-000 because of injury to one person in any one accident and up to at least $ 300,000 because of injury to two or more persons in any one accident or, at the option of the insurer, up to at least $ 300,000 in a single limit for these coverages, except for policies issued under the Assigned Risk Plan. Also, at least $ 5,000 for damage to property of others in any one accident.

Additionally, insurers may offer higher benefit levels than those enumerated above as well as additional benefits. However, an insured may elect to purchase lower benefit levels than those enumerated above.

Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected.

If you have any questions or you do not understand all of the various options

In the absence of a Section 1791 form, Mr. James Heintz and Marian Heintz could not make a knowing and intelligent reduction of benefits under Section 1734[3]. Pursuant to Section 1734, the majority of the panel finds the underinsured policy limits to be equal to the bodily injury limits.

Award of Arbitration Panel at 1. The arbitrators awarded the Heintzes $900,000.00, with a credit of $150,000.00 for the payment Nationwide already paid. Thus, the net award to the Heintzes was $750,000.00.

¶ 7 On December 6, 2000, Appellant filed a "Petition to Vacate, Modify, or Correct Arbitration Award" with the Court of Common Pleas. In one section of the petition, Appellant argued that the award should be modified or corrected under 42 Pa.C.S.A. § 7302(d)(2) because the award was contrary to the law. Petition, ¶¶ 15–16. Specifically, Appellant argued that: (1) the Heintzes did knowingly and voluntarily reduce their UIM coverage; (2) Appellant did not violate § 1734 or § 1791; (3) even if Appellant did violate these sections, the MVFRL provides no legal remedy; and (4) even if a remedy existed, there is no legal basis for reforming the Heintzes' UIM coverage to equal the bodily injury limits. *Id.* at ¶¶ 17–32. Appellant urged the trial court to "either vacate the underlying award, or correct or modify the same to conform to current Pennsylvania statutory and case law." *Id.* at ¶ 33. Finally, Appellant asked the trial court to "enter judgment on this Petition by vacating the underlying arbitration award and ruling that [the Heintzes] are not entitled to any additional money pursuant to their claim for UIM benefits." *Id.* In the alternative, Appellant asked for a new arbitration hearing so that the panel could rule on the issue of whether a valid reduction of UIM coverage took place. *Id.*

¶ 8 On April 3, 2001, the trial court denied the Petition and affirmed the arbitration award. The court reasoned as follows. Given Appellant's request for relief, the Petition would be treated solely as a Petition to Vacate, even though Appellant captioned the petition as a "Petition to Vacate, Modify, or Correct Arbitration Award." Trial Court Opinion, 6/19/2001, at 1–2. Under 42 Pa.C.S.A. § 7314, the only basis for vacating an arbitration award is fraudulent, irregular, or partial conduct by the arbitration panel. Because Appellant failed to allege such fraud or partiality, the court had no power to vacate the award. *Id.* at 3.

¶ 9 Moreover, the court ruled that it would find no legal error even if it did review the award. The court reasoned as follows. In order to ensure that consumers reduce their UIM coverage in a knowing and intelligent manner, the MVFRL requires a written request from the consumer as well as an "Important Notice" under § 1791. *Id.* at 3. In the instant case, the parties stipulated that there was no conclusive proof of whether the Heintzes received the required notice. Next, the arbitrators found as a fact that Appellant failed to show that the Heintzes were adequately informed regarding the reduction in coverage. Under the circumstances, the trial court could not conclude

available to you, contact your agent or company.

If you do not understand any of the provisions contained in this notice, contact your agent or company before you sign.

75   Pa.C.S.A. § 1791.

**3.**   75 Pa.C.S.A. § 1734.

that the panel committed legal error. *Id.* at 3–4. This appeal followed.

¶ 10 Appellant raises five issues on appeal:

A. Whether the lower court abused its discretion and/or committed an error of law in failing to vacate, modify, or correct the Arbitration Award entered in this matter which erroneously found that because the Heintzes were not provided with the § 1791 "Important Notice" found within Pennsylvania's Motor Vehicle Financial Responsibility Law (hereinafter "MVFRL"), they could not have made a knowing and intelligent waiver of coverage.

B. Whether the lower court abused its discretion and/or committed an error of law in failing to vacate, modify, or correct the Arbitration Award entered in this matter wherein the Arbitration Panel relied upon the lack of a § 1791 "Important Notice" as a factor in its decision to award Underinsured Motorist benefits (hereinafter, "UIM Benefits"), to the Heintzes.

C. Whether the lower court abused its discretion and/or committed an error of law in failing to vacate, modify, or correct the Arbitration Award entered in this matter wherein the Arbitration Panel erroneously found that there had been a violation of § 1734 of the MVFRL.

D. Whether the lower court abused its discretion and/or committed an error of law in failing to vacate, modify, or correct the Arbitration Award entered in this matter which erroneously awarded the Heintzes UIM benefits equal to their liability limits.

E. Whether the lower court abused its discretion and/or committed an error of law in holding that in bringing its Petition to Vacate, Modify, or Correct Arbitration Award, Nationwide only requested that the Court vacate the Arbitration Award and since an Arbitration Award will only be vacated upon a showing of fraudulent, irregular or partial conduct on the part of the arbitrators, Nationwide was not entitled to any relief with regard to its Petition.

Appellant's Brief at 4. For clarity, we have reorganized Appellant's five issues on appeal, as follows:

1. Did the trial court err when it construed the Petition solely as a petition to vacate, and further err when it held that it had no power to vacate the award?

2. Did the arbitration panel err as a matter of law when it determined that an "Important Notice" under § 1791 was indispensable to a knowing and voluntary reduction of benefits under § 1734?

3. Assuming that Appellant is permitted to show a knowing and voluntary reduction under § 1734 through the totality of the circumstances, did Appellant carry its burden of proof under the facts of this case?

4. Is there any legal remedy for an insurer's failure to ensure a knowing and voluntary reduction of UM/UIM benefits under §§ 1734 and 1791?

5. Assuming that the only enforceable requirement of § 1734 is that the request for reduction be in writing, did Appellant comply with § 1734?

■ ¶ 11 First, Appellant argues that the trial court erred by holding that it had no power to grant relief. Appellant argues that the court erroneously treated the Petition solely as a Petition to Vacate, and then erroneously ruled that it could

not provide any relief because Appellant failed to allege fraud or partiality by the arbitrators. We agree.

¶ 12 The Agreement called for arbitration under the Act of 1927. This fact significantly affects the scope of review of the arbitrators' decision. The Act of 1927 allowed trial courts to grant relief from an arbitration award where the award was legally erroneous. 5 P.S. § 171(d)(1927) (repealed). The Act of 1927 was repealed and replaced by the Act of 1980, which is set forth at 42 Pa.C.S.A. §§ 7301–7320. The Act of 1980 sets forth more narrow bases for vacating, modifying, and/or correcting statutory arbitration awards than does the Act of 1927.[4] Most significantly, aside from a preservation clause discussed below, the Act of 1980 eliminated the trial court's power to review arbitration awards for an error of law. *Knarr v. Erie Ins. Exchange*, 555 Pa. 211, 723 A.2d 664, 665 (1999). The Act of 1980 preserved the scope of review for arbitration agreements under the Act of 1927. 42 Pa.C.S.A. § 7302(d)(2). Specifically, "a court asked to review an arbitration award made under the provisions of the Act of 1927 may modify or correct the award where it is 'contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict.'" *Krakower v. Nationwide Mut. Ins. Co.*, 790 A.2d 1039, 1040 (Pa.Super.2001) (citations omitted).

¶ 13 Appellant's petition was filed pursuant to 42 Pa.C.S.A. § 7302(d)(2), which reads as follows:

Where this paragraph is applicable a court in reviewing an arbitration award pursuant to this subchapter shall, notwithstanding any other provision of this subchapter, modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict.

42 Pa.C.S.A. § 7302(d)(2).

▪▪▪▪ ¶ 14 Section 7302(d)(2) provides that a court shall "modify" or "correct" an arbitration award where it is contrary to law. In applying this standard, a panel of this Court observed that under the Act of 1927, "the power to enter the equivalent of judgment notwithstanding the verdict is provided as part of the power to modify or correct an award." *Obdyke v. Harleysville Mut. Ins. Co.*, 299 Pa.Super. 298, 445 A.2d 763, 766 n. 4 (1982). When exercising this power to grant relief as a result of legal error, courts should be careful to clarify that they are "modifying or correcting" the award, rather than "vacating" it. *See, id.* Accord, *Ragin v. Royal Globe Ins. Co.*, 315 Pa.Super. 179, 461 A.2d 856 (1983) (under the Act of 1927, the trial court had the power to grant the equivalent of j.n.o.v. with respect to a legally erroneous arbitration award, even though the court couched its relief in terms of "vacating" the award).[5] Similarly, petitioners who seek relief from a legally erroneous arbitration award should be careful to caption their petitions as petitions to modify or correct

---

4. *Compare*, 42 Pa.C.S.A. § 7314 with § 10 of the Act of 1927, 5 P.S. § 170 (repealed) (pertaining to vacating awards); and 42 Pa.C.S.A. § 7315 with section 11 of the Act of 1927, 5 P.S. § 171 (repealed) (pertaining to modifying and/or correcting awards).

5. This is so because under the Act of 1927, courts "vacated" arbitration awards where they were the result of corruption, fraud, partiality, misconduct, or abuse of power. *See*, 5 P.S. § 170 (1927)(repealed). Courts "modified or corrected" arbitration awards when they resulted from legal error. *See*, 5 P.S. § 171 (1927)(repealed).

the award, because § 7302(d)(2) authorizes only modification or correction. *See, Krakower, supra.*

¶ 15 In the instant case, the caption of Appellant's petition added unnecessary confusion by using the words "modify, correct, and/or vacate." On the other hand, the substance of the petition advanced several reasons why the arbitration award was contrary to law. This was sufficient for the trial court to review the petition and to grant relief under § 7302(d)(2), governing arbitration arising under the Act of 1927. The trial court erroneously applied the restrictive standards of § 7314, governing arbitration arising under the Act of 1980. Accordingly, we conclude that the trial court erred as a matter of law when it ruled that it had no power to grant relief to Appellant. Appellant's first issue is meritorious.

¶ 16 Next, Appellant argues that the arbitrators (and, by extension, the trial court) erred in holding that an "Important Notice" under § 1791 was required to effectuate a knowing and voluntary reduction of UIM coverage. As noted above, the arbitration panel found that "there was no Section 1791 'Important Notice' sent by Nationwide [to] Mr. James Heintz and Mrs. Marian Heintz. In the absence of a Section 1791 form, Mr. James Heintz and Marian Heintz could not make a knowing and intelligent reduction of benefits under Section 1734." Arbitration Award at 1.

■ ¶ 17 Appellant acknowledges that it could not prove that the Heintzes had received the "Important Notice" set forth in § 1791. Appellant argues that, despite this lapse, it was entitled to prove through

the totality of the circumstances that the Heintzes knowingly and voluntarily reduced their UIM coverage under 75 Pa. C.S.A. § 1734. For the reasons set forth below, we conclude that such an approach is not viable in light of recent precedent from our Supreme Court. We will begin with a brief discussion of the relevant statutory provisions, then discuss Superior Court cases interpreting those provisions, then conclude with a discussion of recent Supreme Court precedent.

¶ 18 First, we examine Sections 1791 and 1734. Section 1791 provides that if the insurer provides the "Important Notice" set forth in that Section, then a presumption arises that the insured was advised of the benefits and limits available under the MVFRL.[6] The Legislature enacted § 1791 in part to ensure that motorists act knowingly and voluntarily when they choose reduced UM/UIM coverage. *See, Lewis v. Erie Ins. Exch.,* 793 A.2d 143, 153–154 (Pa.2002); *Salazar v. Allstate Ins. Co.,* 549 Pa. 658, 702 A.2d 1038, 1044 (1997).

¶ 19 Section 1734 reads as follows:

**§ 1734. Request for Lower Limits of Coverage**

A named insured may request in writing the issuance of coverages under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury.

75 Pa.C.S.A. § 1734.

■ ¶ 20 On its face, the only requirement of Section 1734 is that the insured's request for reduced coverage be in writing.[7] *See, Lewis,* 793 A.2d at 153. Never-

---

6. *See,* note 2, *supra,* for the text of 75 Pa. C.S.A. § 1791.

7. We observe that the writing requirement is not at issue in the instant case. If the request

theless, this Court has grafted a "knowing and voluntary" component onto § 1734. *See, Tukovits v. Prudential Ins. Co. of Am.*, 448 Pa.Super. 540, 672 A.2d 786 (1996), *appeal denied,* 546 Pa. 668, 685 A.2d 547 (1996); *Botsko v. Donegal Mut. Ins. Co.*, 423 Pa.Super. 41, 620 A.2d 30 (1993), *appeal denied,* 536 Pa. 624, 637 A.2d 284 (1993). The *Tukovits*[8] and *Botsko*[9] Courts both addressed the requirement of a knowing and voluntary written waiver of UM/UIM coverage. Essentially, *Tukovits* and *Botsko* held that where the insurer failed to provide the insured with notice under § 1791, the insurer has the burden of proving, under the totality of the circumstances, that the insured voluntarily and knowingly chose reduced UM/UIM coverage or was informed that the insured could purchase UM/UIM coverage equal to the bodily injury limits. The *Tukovits* Court addressed the "knowing and voluntary" requirement as follows:

> If the insurer's notice does not meet the requirements of section 1791, then the insurer must establish waiver pursuant to the rule set forth in *Johnson v. Concord Mutual Insurance Co.*, 450 Pa. 614, 300 A.2d 61 (1973). In accordance with *Johnson,*
>
>> a waiver of the statutory right to certain levels of uninsured motorists coverage must be "affirmatively expressed in writing by the insured," which must evidence "an express agreement or acquiescence on the part of the insured to delete or relinquish this protection..." 450 Pa. at 621, 300 A.2d at 65.

was not made in writing, then: (1) the lower limits allegedly selected by the insured are a nullity; and (2) UM/UIM coverage is deemed to be equivalent to the bodily injury liability limits. *Motorists Ins. Cos. v. Emig,* 444 Pa.Super. 524, 664 A.2d 559, 561 (1995); *Cebula v. Royal & SunAlliance Ins. Co.,* 158 F.Supp.2d 455, 462 (M.D.Pa.2001). *Emig* held that a request for lower limits is ineffective if it is not in writing, even if the insured received an "Important Notice" under § 1791. *Emig,* 664 A.2d at 569. In other words, compliance with § 1791 does not "trump" the writing requirement of § 1734. *See also, Lucas v. Progressive Cas. Ins. Co.,* 451 Pa.Super. 492, 680 A.2d 873, 876–877 (1996) (compliance with § 1791 does not excuse noncompliance with § 1731 in the context of rejecting UM/UIM coverage), *appeal denied,* 548 Pa. 619, 693 A.2d 589 (1997).

8. In *Tukovits,* the insured held a policy with UM/UIM coverage of $15,000.00 per person / $30,000.00 per accident (15/30), and bodily injury coverage of 100/300. In 1984, the insured signed and dated an "elective writing" indicating that he wanted to renew his policy with the present UM/UIM limits. Over the following years, the insured signed and renewed his policy many times with the same UM/UIM limits. The insured died in an accident with an uninsured motorist. The in-

sured's wife argued that the 1984 elective writing was not knowingly and voluntarily executed; therefore, the UM/UIM limits should be reformed upward to equal the bodily injury limits. The *Tukovits* Court held that the 1984 elective writing did not comply with 75 Pa.C.S.A. § 1791 and that the insurer failed to carry its burden of proving under the totality of the circumstances that the insured knowingly and voluntarily chose reduced UM/UIM coverage. Thus, the Court ruled that the insurer was required to provide UM/UIM benefits equal to the bodily injury limits.

9. In *Botsko,* the insured applied for and received a policy with $300,000.00 in bodily injury coverage and $35,000.00 in UM/UIM coverage. The insurer did not provide the insured with notice under § 1791, and could not prove under the totality of the circumstances that the insured was ever informed that he could purchase UM/UIM coverage equal to the bodily injury limits. Moreover, the insurer never gave the insured the opportunity to affirmatively waive, in writing, UM/UIM coverage equal to bodily injury coverage. The *Botsko* Court held that in the absence of a knowing and voluntary waiver in writing, the insured was entitled to UM/UIM coverage equal to bodily injury coverage.

A two-step analysis is required in determining whether the insured made a knowing and intelligent election in writing for lower UM/UIM coverage. First, in order for the writing to evidence "an express agreement or acquiescence on the part of the insured" to elect an amount of UM/UIM coverage less than the statutory mandate, the insured must have been made aware of the coverage that was available. Without having been made aware of the coverage that was available, the insured could not knowingly and intelligently waive the coverage mandated by statute.

Second, upon finding initial evidence that the insured was made aware of the coverage available, the trial court may look to events which occurred prior to and after the election in writing for further evidence that the insured acted knowingly and intelligently. For example, such relevant events may include whether the insured previously obtained the same level of UM/UIM coverage, whether the premiums paid reflected the reduced level of UM/UIM coverage, whether the insured ever questioned the level of UM/UIM coverage, whether the insured amended or added vehicles to their policy, and whether the forms that evidenced such transactions reflect the level of UM/UIM coverage.

*Tukovits,* 672 A.2d at 789–790 (citations omitted).

¶ 21 *Tukovits* and *Botsko* have not been expressly overruled, and our Supreme Court has noted as much. *See, Lewis,* 793 A.2d at 154 n. 17; *Salazar,* 702 A.2d at 1043 n. 10. We are constrained, however, to conclude that our Supreme Court has effectively overruled the "totality of the circumstances" analysis. *See, Salazar,* 702 A.2d at 1044; *Donnelly v. Bauer,* 553 Pa. 596, 720 A.2d 447, 454 (1998).

¶ 22 We initially observe that this Court in *Tukovits* relied on *Johnson, supra,* which our Supreme Court expressly refused to follow as authority in *Salazar.* In *Salazar,* the insured applied for coverage from Allstate, and rejected UM coverage. Allstate complied with § 1731 and § 1791, but did not comply with § 1791.1, which required the insurer to provide specific information to insureds at the time of a policy renewal.[10] After the passengers in the insured's vehicle were injured by an

---

10. Section 1791.1 reads as follows:

**§ 1791.1 Disclosure of premium charges and tort options**

(a) **Invoice.**—At the time of application for original coverage and every renewal thereafter, an insurer must provide to an insured an itemized invoice listing the minimum motor vehicle insurance coverage levels mandated by the Commonwealth and the premium charge for the insured to purchase the minimum mandated coverages. The invoice must contain the following notice in print of no less than ten-point type: The laws of the Commonwealth of Pennsylvania, as enacted by the General Assembly, only require that you purchase liability and first-party medical benefit coverages. Any additional coverages or coverages in excess of the limits required by law are provided only at your request as enhancements to basic coverages.

The insurer shall provide the itemized invoice to the insured in conjunction with the declaration of coverage limits and premiums for the insured's existing coverages.

(b) **Notice of tort options.**—In addition to the invoice required under subsection (a), an insurer must, at the time of application for original coverage for private passenger motor vehicle insurance and every renewal thereafter, provide to an insured the following notice of the availability of two alternatives of full tort insurance and limited tort insurance described in section 1705(c) and (d) (relating to election of tort options):

The laws of the Commonwealth of Pennsylvania give you the right to choose either of the following two tort options:

uninsured driver, the insured sought UM benefits, arguing that the insurer's failure to comply with § 1791.1 entitled her to UM benefits. The trial court denied relief. Our Supreme Court affirmed, stating:

> The MVFRL was enacted subsequent to *Johnson* [the Supreme Court case, cited *supra*, which authorized a totality of the circumstances analysis]. Sections 1731, 1791, and 1791.1 set forth the information which an insurer is required to provide in order that the insured may make a knowing and intelligent decision on whether to waive UM benefits coverage. There was no need for a *Johnson* analysis under the section of the MVFRL at issue here; the question was whether the [passengers] have a remedy pursuant to the MVFRL for [Allstate's] failure to comply with section 1791.1.

*Salazar,* 702 A.2d at 1044. The Supreme Court ruled that a "totality of the circumstances" analysis was inappropriate because the relevant question was whether the insured had a remedy under the MVFRL. *Id.* The answer was that, under § 1791.1, the MVFRL did not provide any enforcement mechanism for an insurer's failure to comply. *Id.*

¶ 23 Later, in *Donnelly,* our Supreme Court again refused to fashion a remedy for an insurer's failure to comply with a notice requirement of the MVFRL [11] because the statute itself did not expressly provide for such a remedy. *Donnelly,* 720 A.2d at 454.

¶ 24 Recently, our Supreme Court held that the technical requirements of § 1731 do not apply to reductions of coverage

---

A. **"Limited Tort" Option**—This form of insurance limits your right and the rights of members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of "serious injury," as set forth in the policy, or unless one of several other exceptions noted in the policy applies.

B. **"Full Tort" Option**—This form of insurance allows you to maintain an unrestricted right for yourself and other members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering or other nonmonetary damages as a result of injuries caused by other drivers.

If you wish to change the tort option that currently applies to your policy, you must notify your agent, broker or company and request and complete the appropriate form.

(c) **Notice of premium discounts.**—Except where the commissioner has determined that an insurer may omit a discount because the discount is duplicative of other discounts or is specifically reflected in the insurer's experience, at the time of application for original coverage and every renewal thereafter, an insurer must provide to an insured a notice stating that discounts are available for drivers who meet the requirements of sections 1799 (relating to restraint system), 1799.1 (relating to antitheft devices) and 1799.2 (relating to driver improvement course discounts).

(d) **Additional information.**—Upon an oral or written request, an insurer subject to this chapter shall provide to the requestor information on the requestor's cost to purchase from the insurer the minimum requested automobile insurance coverages under either of the two tort options described in subsection (b). These requirements shall include the request for and provision of information by telephone.

75 Pa.C.S.A. § 1791.1.

**11.** *See,* 75 Pa.C.S.A. § 1705(a)(3).

under § 1734. *Lewis*, 793 A.2d at 155. Our Supreme Court observed that, in light of this holding, there was no need for this Court to discuss "the availability and extent of a remedy for an actual violation of the written-request requirement of Section 1734." *Id.* at 154 n. 17. In a footnote, the Court noted that its ruling was not in conflict with *Tukovits* and *Botsko*. *Id.*

¶ 25 We now address whether the knowing and voluntary standard of *Tukovits* and *Botsko* remain viable after *Salazar, Donnelly* and *Lewis*. We do observe that our Supreme Court noted that the mere fact that it denied *allocatur* in *Tukovits* and *Botsko* did not suggest an endorsement of the reasoning of those cases. *Salazar*, 702 A.2d at 1043 n. 10. We also recognize that our Supreme Court recently discussed *Tukovits* and *Botsko* without disapproval in *Lewis* where compliance with § 1791 was not at issue. *See, Lewis*, 793 A.2d at 154 n. 17.[12]

¶ 26 *Salazar* is the closest case to the case before us. While *Salazar* did not address § 1734 or § 1791, it did address § 1791.1, which contains notice provisions similar to those found in § 1791. The *Salazar* Court ruled that the "knowing and voluntary" requirements of the MVFRL must be analyzed solely in terms of whether the insurer complied with the statutory procedures set forth by the Legislature and whether the insured has a remedy therein for an insurer's noncompliance. *Salazar*, 702 A.2d at 1044. Thus, following *Salazar*, we conclude that any implied "knowing and voluntary" requirement of § 1734 is to be analyzed solely in terms of: (1) whether the insurer complied with the statutory procedures of § 1791; and, (2) if not, whether there is a remedy in the MVFRL for failing to do so.[13] We now turn to these issues.

■ ¶ 27 Appellant argues that there is no remedy for an insurer's failure to com-

12. At least three federal courts have held that, in light of *Salazar*, the "totality of the circumstances" approach announced in *Tukovits* and *Botsko* is no longer viable. *See, State Farm Mut. Auto. Ins. Co. v. Ciccarella,* 2002 WL 827138, 2002 U.S. Dist. LEXIS 7698, *11 (E.D.Pa. May 1, 2002); *Clifford v. Prudential Prop. & Cas. Ins. Co.,* 2001 WL 1076582, 2001 U.S. Dist. LEXIS 13808, *17 (M.D.Pa. Aug. 28, 2001); *Nationwide Mut. Ins. Co. v. Murphy,* 1998 WL 964212, 1998 U.S. Dist. LEXIS 17641, —— 12–13 (E.D.Pa. Nov. 3, 1998). Our holding is in accord with these authorities. We also note that a number of federal courts have declined to impose a remedy for violations of § 1734 and § 1791 because none exists in the MVFRL itself. *Nationwide Mut. Ins. Co. v. Buffetta,* 230 F.3d 634, 641–642 (3rd Cir.2000); *Clifford,* 2001 WL 1076582, *9, 2001 U.S. Dist. LEXIS 13808, 27–28; *Murphy,* 1998 WL 964212, **3–4, 1998 U.S. Dist. LEXIS 17641, 11–14.

13. Appellant argues that it did prove through the totality of the circumstances that the Heintzes knowingly and voluntarily reduced their UIM coverage. For two reasons, we need not address this issue. First, as noted above, the totality of the circumstances approach is no longer appropriate for a § 1734 analysis. Second, as noted further *infra*, the Heintzes have no remedy for a violation of § 1791. Thus, even if the totality of the circumstances showed that the Heintzes did not act knowingly and voluntarily, we would still conclude that they are not entitled to the relief they received.

If we did address the argument regarding the totality of the circumstances, we would note a gap in the record which significantly hampers appellate review. In the instant case, the arbitration panel made no reference to any alternative method of proving a valid reduction of benefits under § 1734. The panel simply held that Appellant's failure to prove compliance with § 1791 was fatal to Appellant's position. *See,* Arbitration Award at 1 ("there was no Section 1791 'Important Notice' sent by Nationwide [to] Mr. James Heintz and Mrs. Marian Heintz. In the absence of a Section 1791 form, Mr. James Heintz and Marian Heintz could not make a knowing and intelligent reduction of benefits under Section 1734"). Because the arbitration panel did not consider the totality of the

ply with § 1791. In *Tukovits*, this Court held that the remedy for an unknowing or involuntary reduction of UM/UIM coverage under § 1734 was to raise UM/UIM coverage to the limits of bodily injury coverage. *Tukovits*, 672 A.2d at 791. *Salazar* compels us to conclude that our Supreme Court effectively overruled *Tukovits* and changed the analysis to focus on one question: namely, whether the MVFRL expressly provided for such a remedy. *Salazar*, 702 A.2d at 1044.[14] Our review of the MVFRL reveals no express remedy for a violation of § 1791. Thus, the Heintzes are not entitled to a remedy for Appellant's failure to provide notice under § 1791.

¶ 28 Finally, Appellant argues that it did not violate § 1734 because: (1) the only requirement of § 1734 is that the insured request reduced coverage in writing; and (2) it is undisputed that the Heintzes did request lower UIM coverage in writing. We need not address this question direct-

ly, because we have already held that the Heintzes are not entitled to the relief they seek under the MVFRL.

¶ 29 Lest our holding appear unduly harsh, we note the following. It is undisputed that, for many years, the Heintzes paid lower premiums in exchange for reduced UIM coverage. The Heintzes sought to raise their coverage only after a devastating accident involving an underinsured motorist. In *Donnelly*, 720 A.2d at 454, our Supreme Court stressed that the policy behind the MVFRL was to stem the rising cost of insurance in Pennsylvania. If we were to reform the Policy and grant the Heintzes greater coverage than they paid for, we would contravene this cost-containment policy because insurance companies would pass along these additional costs to other insureds. *Id.*

¶ 30 Next, we stress that the basic "writing" requirement of § 1734 is not at issue in the instant case. In *Lewis*, our Su-

---

circumstances as an alternate approach, we agree with Appellant that the panel's analysis was incomplete.

According to the trial court, the arbitration panel did indeed address the totality of the circumstances. The trial court wrote:

The arbitrators determined, as the finders of fact, that there was no showing that an adequate explanation was provided to the Heintzes, particularly Mr. Heintz, of the nature of UIM coverage or the extent of such coverage that was available. Although Nationwide points to an authorization form executed only by Marion Heintz in June of 1991, the existence of the authorization neither conclusively nor presumptively establishes an intelligent and knowing reduction of UIM coverage by the Heintzes. After considering two days of evidence, the arbitrators determined that the authorization form relied upon by Nationwide did not constitute an informed request for lesser UIM coverage as required by Section 1734. Based on a review of the record, this Court cannot conclude that the arbitrators committed error.

Trial Court Opinion, 6/19/2001, at 3–4.

We are constrained to note that the record fails to support these conclusions. The arbitrators' decision contains no findings of fact, conclusions of law, or credibility determinations regarding the knowing or voluntary nature of the Heintzes' election of reduced coverage (aside from the undisputed lack of proof regarding the § 1791 "Important Notice"). Indeed, so far as we can tell from the decision, the panel took two days of testimony and then relied solely on one undisputed fact for its decision: namely, lack of notice under § 1791. The trial court and this Court cannot defer to the arbitrators' findings of fact when no such findings took place.

14. *See also, Buffetta*, 230 F.3d at 641–642; *Clifford*, 2001 WL 1076582, *9, 2001 U.S. Dist. LEXIS 13808, 27–28; *Murphy*, 1998 WL 964212, **3–4, 1998 U.S. Dist. LEXIS 17641, 11–14.

preme Court expressed a certain measure of concern over any holding that would imply that there is no remedy for this basic requirement. *Lewis,* 793 A.2d at 154 n. 17 ("[the written-request] prescription is less technical in nature, and more directly in line with the traditional application of ordinary contract principles in the consumer arena, than Section 1731(c.1)'s separate-page requirement"). Rather, the instant case concerns the effect of noncompliance with the notice requirements of § 1791. While § 1791 does ensure that reduction of coverage is knowing and voluntary, our concern over noncompliance with § 1791 is somewhat tempered. "[R]equests for specific limits coverage, in contrast to outright waiver/rejection, require not only the signature of the insured, but also, an express designation of the amount of coverage requested, thus lessening the potential for confusion." *Id.* at 153.

¶ 31 We summarize our holdings as follows. First, under 42 Pa.C.S.A. § 7302(d)(2), the trial court had the power to correct or modify the arbitration award. Second, to the extent that § 1734 contains a requirement that insureds elect reduced UIM reduction benefits in a knowing and voluntary manner, this requirement can be satisfied only by complying with § 1791, assuming the writing requirement of § 1734 has been met. Third, there is no express remedy under the MVFRL for a violation of § 1791. Finally, in the absence of an express remedy, we are constrained to conclude that the arbitration panel erred as a matter of law by reforming the Heintzes' UIM coverage as it did. Because the trial court affirmed the legally erroneous award, we are constrained to vacate the judgment. We remand for the trial court to enter a judgment reflecting the fact that the Heintzes are entitled to $150,000.00 in UIM benefits.

¶ 32 Judgment vacated. Remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.