Kenneth L. & Edna C. KLINE,
h/w, Appellees,

v.

OLD GUARD INSURANCE
COMPANY, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 20, 2002.

Filed March 24, 2003.

Allan C. Molotsky, Philadelphia, for appellant.

James M. Potter, Reading, for appellees.

BEFORE: STEVENS, OLSZEWSKI and BECK, JJ.

OPINION BY BECK, J.:

¶ 1 In this declaratory judgment action, plaintiff-appellees Kenneth L. Kline and Edna C. Kline (the Klines) sought a declaration that they were entitled to underinsured motorist (UIM) benefits under a motor vehicle insurance policy issued by defendant-appellant Old Guard Insurance Company (Old Guard), pursuant to Pennsylvania's Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. §§ 1701–1799.7 (Purdon 1996). The trial court granted summary judgment in favor of the Klines in the amount of $300,000. Old Guard filed this timely appeal. Old Guard asserts the trial court erred in granting summary judgment in favor of the Klines on the issue of coverage. Old Guard also argues the trial court erred in awarding damages in this declaratory judgment action, which sought merely a declaration of the parties' rights under the policy, and where no evidence on damages was presented. We reverse and remand.

¶ 2 Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Keystone Aerial Surveys, Inc. v. Pennsylvania Prop. & Cas. Ins. Guaranty Ass'n*, 777 A.2d 84 (Pa.Super.2001). Our scope of review of a grant of summary judgment is plenary. *Id.*

¶ 3 The instant matter was submitted to the trial court on cross-motions for summary judgment on stipulated facts. Appellee Kenneth Kline suffered injuries in a motor vehicle accident on July 10, 1997. The accident was caused by the negligence of Jennifer Stancliff, who had liability in-

surance limits of $15,000 per person with Allstate Insurance Company. Allstate tendered its limits of liability ·coverage to the Klines. On the day of the accident, the Klines were covered by a motor vehicle insurance policy issued by appellant Old Guard, which provided liability coverage with a single limit of $100,000, covering the three vehicles they owned.

¶ 4 Prior to purchasing the policy of insurance issued by Old Guard, the Klines had obtained a policy of motor vehicle insurance through the Walter Stump Insurance Agency. Prior to August 8, 1995, Walter Stump contacted the Klines and advised that it was necessary for them to switch to a new insurance company, Old Guard. As a result of this phone conversation, David Doll, an employee of the Walter Stump Insurance Agency, went to the Klines' residence on August 8, 1995 to obtain their signatures on the application forms for Old Guard coverage.

¶ 5 The application forms presented to the Klines at that time included, *inter alia,* a "Pennsylvania auto insurance coverage selection form," and a "rejection of underinsured motorist protection form." The "coverage selection form" contained the Klines' selection of coverage limits and election of the limited tort option. The Klines signed the form directly under a statement that read: "YOUR SIGNATURE ACKNOWLEDGES THAT YOU HAVE READ AND UNDERSTAND THE TERMS AND CONDITIONS OF THE IMPORTANT NOTICES FOUND ON THE REVERSE SIDE HEREOF." Despite their signature under this warning language, the parties stipulated that the Klines did not know the "Important Notice" was located on the reverse side of the coverage selection form.

¶ 6 Nonetheless, the reverse side of the "coverage selection form" contained the "Important Notice" required by 75 Pa.C.S. § 1791, which provides:

### § 1791. Notice of available benefits and limits

*It shall be presumed that the insured has been advised of the benefits and limits available under this chapter provided the following notice in bold print of at least ten-point type is given to the applicant at the time of application for original coverage, and no other notice or rejection shall be required:*

IMPORTANT NOTICE

Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits for you, your spouse or other relatives or minors in your custody or in the custody of your relatives, residing in your household, occupants of your motor vehicle or persons struck by your motor vehicle:

(1) Medical benefits, up to at least $100,000.

(1.1) Extraordinary medical benefits, from $100,000 to $1,100,000 which may be offered in increments of $100,000.

(2) Income loss benefits, up to at least $2,500 per month up to a maximum benefit of at least $50,000.

(3) Accidental death benefits, up to at least $25,000.

(4) Funeral benefits, $2,500.

(5) As an alternative to paragraphs (1), (2), (3) and (4), a combination benefit, up to at least $177,500 of benefits in the aggregate or benefits payable up to three years from the date of the accident, whichever occurs first, subject to a limit on accidental death benefit of up to

$25,000 and a limit on funeral benefit of $2,500, . . .

(6) Uninsured, underinsured and bodily injury liability coverage up to at least $100,000 because of injury to one person in any one accident and up to at least $300,000 because of injury to two or more persons in any one accident or, at the option of the insurer, up to at least $300,000 in a single limit for these coverages, except for policies issued under the Assigned Risk Plan. Also, at least $5,000 for damage to property of others in any one accident.

Additionally, insurers may offer higher benefit levels than those enumerated above as well as additional benefits. However, an insured may elect to purchase lower benefit levels than those enumerated above.

*Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected.*

*If you have any questions or you do not understand all of the various options available to you, contact your agent or company.*

*If you do not understand any of the provisions contained in this notice, contact your agent or company before you sign.*

75 Pa.C.S. § 1791 (emphasis added). The Klines signed the "coverage selection form" on the lines indicated by David Doll without reading the language of the § 1791 Important Notice.

¶ 7 In addition, the Klines signed a "rejection of underinsured motorist protection" form. This form contained two paragraphs of text, and space for signatures under each paragraph. The first paragraph was entitled "REJECTION OF UNDERINSURED MOTORIST PROTECTION" and stated:

By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

Directly underneath this text, the Klines signed their names and dated the form. The UIM rejection form contained the exact language required by statute, 75 Pa. C.S. § 1731.[1]

---

1. Section 1731 provides, in pertinent part:

**(c) Underinsured motorist coverage.**—Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles. The named insured shall be informed that he may reject underinsured motorist coverage by signing the following written rejection form:
REJECTION OF UNDERINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage . . .
75 Pa.C.S. § 1731(c). The second paragraph on this form was entitled "REJECTION OF STACKED UNDERINSURANCE MOTORIST PROTECTION." The paragraph pertains to rejecting the option to stack UIM coverage,

¶ 8 The parties stipulated that, at the time the Klines signed this UIM rejection form, they did not know or understand what UIM coverage was, and that remained true until at least the date of the accident. According to Kenneth Kline's deposition, David Doll did not explain the meaning of the application forms signed by the Klines on August 8, 1995 and Old Guard presented no evidence to the contrary. The Klines paid all premiums due, including all renewal premiums, for policies of insurance issued by Old Guard, beginning effective August 8, 1995, and renewed on February 8, 1996, on August 8, 1996, on February 8, 1997, and on August 8, 1997.

¶ 9 The trial court determined that, despite Old Guard's presentation of the Important Notice form and the UIM coverage rejection form required by the MVFRL, and the Klines' signatures thereon, the Klines did not "knowingly and intelligently" waive their right to purchase UIM protection. Specifically, the trial court concluded that because the Klines did not place their signature "on" the Important Notice, but instead signed on the other side of that page (beneath a statement directing their attention to the reverse side), the statutory presumption of notice contained in § 1791 did not apply.

¶ 10 Moreover, the court held that since the Klines had not been given proper § 1791 notice, their rejection of UIM protection was void. He concluded that the Old Guard policy must be reformed to include UIM coverage to the same limits as were purchased for bodily injury liability coverage, or $100,000, as provided by 75 Pa.C.S. § 1731(c.1), in the event of improper waiver.[2] In addition, the trial court stacked these limits for three cars, yielding $300,000 in total coverage. 75 Pa.C.S. § 1738.

¶ 11 The trial court reached this conclusion despite the fact that the Klines do not claim the UIM coverage rejection form they signed was improper under § 1731(c). Indeed, they could not make such a claim. Our Supreme Court has expressly approved a rejection/waiver form such as the one signed by the Klines in this case, where the rejection of UIM protection appeared on the same page as the rejection of stacking of UIM protection. *Winslow–Quattlebaum v. Maryland Ins. Group*, 561 Pa. 629, 752 A.2d 878 (2000). *See also Lewis v. Erie Ins. Exchange*, 568 Pa. 105, 124, 793 A.2d 143, 154 (2002) (Supreme Court acknowledged that waiver of UIM coverage could appear on same page as waiver of UIM coverage stacking).

¶ 12 Instead, the court held the Klines were not given proper § 1791 notice, that

and obviously applies only in situations where UIM coverage has been purchased. The Klines did not sign in the spaces under this second paragraph. R.R. 51a.

2. Section 1731(c.1) provides:

(c.1) **Form of waiver.**—Insurers shall print the rejection forms required by subsections (b) [relating to uninsured motorist protection] and (c) on separate sheets in prominent type and location. The forms must be signed by the first named insured and dated to be valid. The signatures on the forms may be witnessed by an insurance agent or broker. Any rejection form that does not specifically comply with this section is void.

If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits. On policies in which either uninsured or underinsured coverage has been rejected, the policy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by uninsured or underinsured motorists. *Any person who executes a waiver under subsection (b) or (c) shall be precluded from claiming liability of any person based upon inadequate information.*

75 Pa.C.S. § 1731(c.1) (emphasis added).

they had not otherwise made a "knowing and intelligent" waiver of UIM coverage, and their rejection of such coverage was therefore void.

¶ 13 We first note there are no cases to support the trial court's conclusion that the Important Notice given to the Klines did not comply with § 1791. Indeed, the Klines' signatures appear on the reverse side, under clear language directing their attention to its existence. Though the trial court makes much of the fact that the Klines did not read or sign "on" the Important Notice itself, § 1791 does not even require this. The mere "payment of renewal premiums evidences [the Klines'] actual knowledge and understanding of the availability of these benefits." 75 Pa.C.S. § 1791. *See Clifford v. Prudential Prop. & Cas. Ins. Co.*, 2001 WL 1076582, 2001 U.S. Dist. LEXIS 13808 (M.D.Pa.2001) (the fact that the insurer did not have a § 1791 form signed by the insured did not preclude proper notice where renewal premiums had been paid). There is no dispute that the Klines paid renewal premiums on four separate occasions prior to making their claim.

¶ 14 In addition, we reject the Klines' argument that they should be permitted to avoid the consequences of unambiguous policy language by proof that they failed to read or understand it. *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563 (1983).

¶ 15 Moreover, in determining that the Klines did not "knowingly and intelligently" waive their rights to UIM coverage, the trial court engaged in an analysis that has been overruled by our most recent cases. Specifically, the court relied on *Tukovits v. Prudential Ins. Co.*, 448 Pa.Super. 540, 672 A.2d 786 (1996) and *Botsko v. Donegal Mutual Ins. Co.*, 423 Pa.Super. 41, 620 A.2d 30 (1993). However, this line of cases was abandoned by our Supreme

Court in *Salazar v. Allstate Ins. Co.*, 549 Pa. 658, 702 A.2d 1038 (1997), and most recently by our court in *Nationwide Mut. Ins. Co. v. Heintz*, 804 A.2d 1209 (Pa.Super.2002). Both cases undermine the trial court's decision.

¶ 16 In *Salazar*, the plaintiff-insured sought uninsured motorist (UM) coverage and the defendant-insurer relied on the insured's rejection of such coverage to deny the benefits. However, the plaintiff-insured argued that he had not received the disclosures mandated by 75 Pa.C.S. § 1791.1 (relating to disclosure of premium charges and tort options), and the Supreme Court agreed that the statute's provisions had been violated. Nonetheless, the Court held the insurance policy would not be reformed to include UM coverage, as this remedy was not included in the statute by the legislature. 549 Pa. at 668, 702 A.2d at 1044.

¶ 17 Furthermore, in response to the insured's argument that he had not made a "knowing and intelligent" waiver of UM protection under the *Tukovits* line of cases, the Supreme Court held that these cases were no longer applicable since the enactment of the notice provisions in the MVFRL; instead, it is those statutes that describe precisely how waiver and rejection of uninsured motorist coverage may be proved. *Id.*

¶ 18 Similarly, and most compelling here, this court acknowledged in *Heintz* that we may no longer participate in an analysis of whether the insured had "knowingly and intelligently" waived UIM protection, *even where the parties had stipulated that the insured had not received the Important Notice mandated by section 1791. Id.* at 1217. We refused to reform the insurance contract to provide UIM coverage to insureds who had rejected such coverage and who had, as a result, paid lower premiums for lesser benefits. *Id.* at 1220. Obviously, choosing lower

limits, or rejecting UIM or UM benefits altogether, is calculated to reduce the total insurance premium owed by the insured and is in furtherance of one of the main policy goals of the MVFRL: to lower the cost of motor vehicle insurance in Pennsylvania. *Lewis, supra* at 123, 793 A.2d at 154.

¶ 19 Our review of the relevant statutes and the application and rejection forms signed by the Klines reveals that there was no violation of the law, and that there was no basis to reform the insurance contract voluntarily entered into by the parties. Our cases have further held that even if there were a violation of § 1791's notice requirement, the MVFRL does not provide a remedy, and the courts are not free to create one. *See, e.g., Salazar, supra* (the remedy of contract reformation provided in § 1731(c.1) does not apply to violations of § 1791.1); *Donnelly v. Bauer,* 553 Pa. 596, 720 A.2d 447 (1998) (the remedy of contract reformation provided in § 1731(c.1) does not apply to violations of § 1705). *See also Lewis, supra* (provisions of § 1731(c) related to outright rejection of UIM coverage do not apply to request for lower limits authorized by § 1734).

¶ 20 We hold the trial court erred in granting summary judgment in favor of the Klines. We reverse and remand so that *summary judgment may be entered in* favor of Old Guard.[3]

¶ 21 Order granting summary judgment reversed; matter remanded for further proceedings. Jurisdiction relinquished.

---

**3.** As a result of this holding, we need not consider Old Guard's additional issue on appeal, regarding the erroneous entry of judgment in favor of the Klines for a particular amount of damages ($300,000), when such award was neither requested by the Klines in this declaratory judgment phase, nor supported by evidence. We do note that in their brief to this court, the Klines conceded that the trial court erred in making this premature award.