630 A.2d 1219

**Mary Catherine DANKO, Appellant,**

v.

**ERIE INSURANCE EXCHANGE, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 5, 1993.

Filed July 19, 1993.

Reargument Denied Oct. 1, 1993.

224

William M. Radcliffe, Uniontown, for appellant.
Stephen P. McCloskey, Washington, for appellee.

Before ROWLEY, President Judge, and JOHNSON and MONTGOMERY, JJ.

MONTGOMERY, Judge:

This appeal presents an issue of first impression concerning the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"). Act of February 12, 1984, P.L. 26, No. 11, § 3, 75 Pa.C.S.A. § 1701, *et seq.*, effective October 1, 1984. This action was instituted by plaintiff Mary Catherine Danko to recover income loss benefits against defendant Erie Insurance Exchange, her motor vehicle insurer. The plaintiff's action was based upon an interpretation of the MVFRL which differed from that relied upon by the insurer. The appeal arises from an order by the Court of Common Pleas of Fayette County which granted summary judgment for the defendant as to one of four counts in the plaintiff's complaint. We conclude that the trial court erred in granting that summary judgment.

It is initially appropriate to discuss the issue of whether this matter is ripe for appellate review. The plaintiff instituted a four count complaint against the defendant, alleging it had improperly failed to pay her income loss benefits. Count I alleged breach of contract; Count II alleged a breach of an implied covenant of good faith and fair dealing; Count III alleged a violation of the Unfair Trade Practices and Consumer Protection Law; and Count IV presented a class action claim for all similarly situated insureds who had been denied benefits sought by the plaintiff in this action. The trial court granted summary judgment in favor of the defendant on the first count, holding that income loss benefits were not due under the terms of the insurance contract. The trial court certified the order for interlocutory appeal by permission, pursuant to Pa.R.App.P. 312, by including language in its order in accordance with 42 Pa.C.S.A. § 702(b). Even in the circumstance of such a certification, Pa.R.App.P. 1311(b) requires that an appellant file a petition for permission to appeal. In the absence of such a petition from the appellant, the appeal would ordinarily be quashed and the case remand-

ed, despite both the trial court's certification of the issue, and the lack of any objection from the opposing party. *Vendale Coal Company, Inc. v. Voto Manufacturing Sales Company,* 353 Pa.Super. 635, 510 A.2d 1246 (1986); *Gellar v. Chambers,* 292 Pa.Super. 324, 437 A.2d 406 (1981). However, a review of the issues presented in this case makes it clear that the order granting summary judgment for the defendant on the first count of the plaintiff's complaint effectively put the plaintiff out of court and ended the litigation. The determination by the trial court that the defendant had *not* improperly failed to pay the plaintiff the income loss benefits, as claimed in Count I, precluded any further litigation of the plaintiff's breach of covenant of good faith and fair dealing (Count II), Unfair Trade Practices and Consumer Protection Law (Count III), and class action (Count IV) claims. Accordingly, the order of the trial court will be considered as final and immediately appealable. *See, Pugar v. Greco,* 483 Pa. 68, 394 A.2d 542 (1978); *Bell v. Beneficial Consumer Discount Company,* 465 Pa. 225, 348 A.2d 734 (1975). We also note that because this action was commenced prior to July 6, 1992, the amendment to Pa.R.App.P. 341, regarding final orders, does not apply.

█ In reviewing the trial court order granting summary judgment, we are mindful that the trial court's order should not be reversed unless the court has committed an error of law or clearly abused its discretion. *Denlinger, Inc. v. Dendler,* 415 Pa.Super. 164, 608 A.2d 1061 (1992). Of course, the instant case presents a question of whether the trial court erred in interpreting a provision of the MVFRL. Thus, a claimed error of law is presented by this appeal.

The facts are not in dispute. The plaintiff was injured in a motor vehicle accident on January 18, 1990, while in the course of her employment with Burke Bus Lines. As a result of her injuries, the plaintiff has been disabled and unable to perform her duties as a bus driver. At the time of the accident, the plaintiff's average weekly wage was $152.60. Since the date of the accident, her employer's workmen's compensation insurance carrier has been paying the plaintiff workmen's compen-

sation benefits in the amount of $139.67 per week.[1] The difference between the plaintiff's average pre-injury weekly gross income and the workmen's compensation benefit she received was $12.93. The MVFRL, in 75 Pa.C.S.A. § 1712(2)(i) provides that the income loss benefit to be provided by an insurer shall be "Eighty percent of actual loss of gross income." Consistent with that statutory provision, the policy issued to the plaintiff by the defendant indicated that the insurer would pay eighty percent of the gross income ". . . actually lost by a person we protect." The policy provided for income loss benefits in maximums of no more than $15,000 per accident, to be paid at a rate not to exceed $1,000 per month.

The plaintiff provided a proof of loss to the defendant, and made a demand for income loss benefits on March 26, 1990. In a response, the defendant denied that any benefits were due. It is the position of the plaintiff that she is entitled to income loss benefits of $10.34 per week, representing eighty percent of the $12.93 difference between her average weekly gross income of $152.60 and the workmen's compensation benefit which amounts to $139.67 per week. Thus, the plaintiff maintains that "eighty percent of actual loss of gross income" in the applicable policy and the MVFRL means that income loss benefits should be calculated, in this situation, by subtracting the weekly workmen's compensation benefit from the gross weekly income she enjoyed at the time of the accident, and computing eighty percent of the difference. She argues that the difference represents the "actual loss of gross income". The defendant, on the other hand, maintains that no income loss benefits are due, because the plaintiff is already receiving workmen's compensation benefits that are greater than eighty percent of the gross weekly wage she enjoyed immediately prior to her period of disability from the motor vehicle accident. Thus, the insurer contends that it is not required, either under the applicable policy or the MVFRL, to pay the plaintiff any income loss benefits. The defendant

1. The plaintiff's workmen's compensation benefit rate, which is more than two-thirds of her average weekly wage, was obviously based upon the applicable minimum compensation rate payable under the Pennsylvania Workmen's Compensation Act. See 77 P.S. § 511.

argues that the proper way to calculate income loss benefits would be to multiply the plaintiff's pre-injury average weekly gross income by eighty percent, and then subtract from that result any weekly workmen's compensation benefits which may be paid to the insured. Because the plaintiff's workmen's compensation benefits exceeded eighty percent of her weekly gross income at the time of the accident, under the defendant's proposed interpretation no income loss benefits would be due.

We are called upon in this case to interpret a statutory provision which has some ambiguity. In determining the legislative intent with regard to the legislation in issue, we are guided by a number of concepts and rules. The Act of December 6, 1972, P.L. 1339, No. 290, § 3, 1 Pa.C.S.A. § 1921, provides the following rules of statutory construction:

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

In resolving the issue presented in this appeal, we recognize that the MVFRL was enacted as a means of insurance reform to reduce the escalating costs of purchasing motor vehicle insurance in our Commonwealth. *Lambert v. McClure,* 407 Pa.Super. 257, 595 A.2d 629 (1991); *Huber v. Erie Insurance Exchange,* 402 Pa.Super. 443, 587 A.2d 333 (1991). However, the underlying objective of the MVFRL is to provide broad coverage to assure the financial integrity of the policyholder. *Callahan v. Federal Kemper Insurance Company,* 390 Pa.Super. 201, 568 A.2d 264 (1989); *Omodio v. Aetna Life and Casualty,* 384 Pa.Super. 544, 559 A.2d 570 (1989). The Law is to be construed liberally to afford the greatest possible coverage to injured claimants. *Sturkie v. Erie Insurance Group,* 407 Pa.Super. 117, 595 A.2d 152 (1991). In close or doubtful insurance cases, it is well-established that a court should resolve the meaning of insurance policy provisions or the legislative intent in favor of coverage for the insured. *Motley v. State Farm Mutual Insurance Company,* 502 Pa. 335, 466 A.2d 609 (1983); *Crawford v. Allstate Insurance Company,* 305 Pa.Super. 167, 451 A.2d 474 (1982); *See also* 1 Pa.C.S.A. § 1928(c).

When considering arguably ambiguous statutory provisions, a court may consider prior law, if any, upon the same or similar subjects. 1 Pa.C.S.A. § 1921(c)(5). In that regard, we are assisted in the resolution of this case by our recognition that the MVFRL replaced the Pennsylvania No-fault Motor Vehicle Insurance Act. Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. § 1009.101, *et seq.* The purpose of the No-fault Act was "... to establish at reasonable cost ... a statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims....". 40 P.S. § 1009.102(b); *Cerrato v. Holy Redeemer Hospital,* 342 Pa.Super. 551, 554, 493 A.2d 728, 730 (1985). Like the MVFRL, it contained a provision for paying work loss benefits. 40 P.S. § 1009.202(b). Under Section 1009.206(a) of the No-fault Act, it was specifically provided that workmen's compensation benefits were to be subtracted from gross work loss in calculating the net loss.

In *Motley v. State Farm Mutual Insurance Company, supra,* our Commonwealth's Supreme Court was presented with a situation analogous to that before us in the instant appeal. In that case, the injured insured had a combined weekly income of $282.96. Following his injury, he received $163.84 a week in workmen's compensation benefits from his employer. The No-fault Act did not provide for an eighty percent calculation; it provided for the full payment of lost income, subject to policy limits. In *Motley,* the Court was presented with the issue of whether in the payment of work loss benefits to the insured, the insurer was liable for: (1) the difference between the workers' compensation benefits received and the insured's actual wages; or (2) the difference between the workers' compensation benefits and the maximum work loss benefits provided by the No-fault Act. In resolving this issue, the court ruled:

"We hold that where an injured claimant is receiving Workmen's Compensation benefits, excess no-fault work loss benefits are to be computed by deducting the Workmen's Compensation benefits from the insured's actual wage, the difference being the benefits to which he is entitled. Section 1009.202(b) of the No-fault Act limits the amount of the work loss benefits which the insurance company will be required to pay. It does not establish a cap on the total sum of lost wage benefits an insured may collect from all sources. 502 Pa. at [340], 466 A.2d at 611."

It is evident that the Supreme Court's holding in *Motley* is supportive of the interpretation advocated by the plaintiff policyholder in the instant appeal.

The *Motley* decision was filed by the Supreme Court in October 1983. The MVFRL, including the provision in issue here, was enacted in 1984. There is no suggestion within the specific provisions of the MVFRL, or from any other source, that the legislature intended to overrule the reasoning of the Supreme Court in *Motley* in the implementation of the then-new vehicle insurance statute. There is also no support for the contention that the eighty percent limitation advocated by

the defendant insurer, in the instant case, was meant as a cap on the amounts which might be recovered by a claimant, from all sources.

While we would certainly agree with the defense contention that *Motley,* and other decisions construing the No-fault Act, are not directly applicable to dispose of issues in dispute under the provisions of the MVFRL, the holding in *Motley* regarding legislation governing similar subject matter, which does not appear to have been intended to be altered by subsequent legislation concerning the same area of concern, cannot be ignored. If the legislature had intended to insert the cap on coverage advocated by the defendant insurer in this case, it certainly could have done so in clear and unmistakable terms. It obviously did not do so.

It is important to recognize that the plaintiff is not seeking benefits in this case that would result in a windfall or a double recovery. She merely claims a percentage of her actual gross income loss which has not been fully covered by workmen's compensation benefits. Even with the income loss benefits we find she is entitled to receive, under the provisions of both her insurance policy and the MVFRL, she will not reach the level of gross income she enjoyed prior to her injury. In that regard, we note that the MVFRL, in 75 Pa.C.S.A. § 1719, contains a coordination of benefits provision, which makes workmen's compensation benefits primary for income loss and other benefits which might be due a claimant who suffers disability in a work-related accident involving the use or maintenance of a motor vehicle.[2] The plaintiff's proposed

2. In pertinent part, § 1719(a) states:
   **General rule.**—Except for workers' compensation, a policy of insurance issued or delivered pursuant to this subchapter shall be primary. Any program, group contract or other arrangement for payment of benefits such as described in section 1711 (relating to required benefits) 1712(1) and (2) (relating to availability of benefits) or 1715 (relating to availability of adequate limits) shall be construed to contain a provision that all benefits provided therein shall be in excess of and not in duplication of any valid and collectible first party benefits provided in section 1711, 1712 or 1715 or workers' compensation.

interpretation is entirely consistent with that aspect of the statute. The workmen's compensation benefits will still be considered primary, in their entirety, in offsetting the plaintiff's lost income. The defendant insurer will not be paying any income loss benefits in duplication of workmen's compensation proceeds received by the plaintiff. Rather, its payments will be based only upon the Section 1712 "actual loss of gross income" suffered by the plaintiff, comprised of the difference between the weekly workmen's compensation amount she receives and her gross pre-injury weekly wage.

■ We conclude that the interpretation advocated by the plaintiff is more reasonable than that submitted by the defendant insurer, and more consistent with the terms of the applicable insurance agreement, the language in the MVFRL, and the apparent legislative intent of that statute. We hold that under the policy language stating that the plaintiff is entitled to "eighty percent of actual loss of gross income" she may recover eighty percent of the difference between the weekly workmen's compensation benefit she has received, and the gross weekly wage she enjoyed as of the date of her disabling motor vehicle injury.

The order of the trial court is hereby reversed and vacated. This case is remanded for further proceedings consistent with this opinion. Jurisdiction is not retained.