**Stanley MAKSYMIUK, Plaintiff,**

v.

**MARYLAND CASUALTY INSURANCE CO., Defendant.**

**Civil Action No. 96–1947.**

United States District Court, E.D. Pennsylvania.

Nov. 20, 1996.

Paul Michael Benn, Philadelphia, PA, for Plaintiff.

Michael T. Farrell, Philadelphia, PA, for Defendant.

## MEMORANDUM

ANITA B. BRODY, District Judge.

Plaintiff filed this action in the Philadelphia Court of Common Pleas seeking the appointment of uninsured motorist arbitrators under a policy of insurance issued by Defendant. Defendant properly filed a notice of removal to this court.

Defendant has moved for summary judgment. The issue before me is whether 75 Pa.C.S.A. § 1731(c.1) provides a remedy to a private litigant for an insurance company's failure to place in a policy renewal form prominent notice that coverage does not extend to uninsured motorist benefits. Because I find that this section provides no such remedy, I will grant Defendant's motion.

Defendant Maryland Casualty Insurance Company issued an automobile insurance policy to plaintiff Stanley Maksymiuk for the period from June 8, 1993 through December 8, 1993. When signing the insurance contract, Plaintiff specifically waived the available uninsured motorist protection in the form required under Pennsylvania law.[1]

Plaintiff was sent renewal policies every six months. The policy renewal covering December 8, 1994 through June 8, 1995, however, contained no notice in prominent type, as required under Pennsylvania law, that the policy did not provide protection for damages incurred in an accident involving an uninsured motorist. On February 28, 1995, Plaintiff was struck by an uninsured motorist in Philadelphia.

■ These facts are not in dispute. The issue is one of law: Does § 1731(c.1) of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701, et seq., provide that an insured individual who has validly waived uninsured motorist liability coverage is nevertheless entitled to such coverage where the insurance company has failed to provide prominent notice of such waiver in policy renewal forms? Plaintiff claims that the only sensible reading of the statute is that it does. Defendant believes that, since § 1731(c.1) does not explicitly afford a remedy to a private litigant, it does not.

---

**1.** Plaintiff also waived underinsured motorist coverage, which is not at issue here but is treated identically to uninsured coverage by the statute and case law. Therefore, the reasoning of cases discussing underinsured motorist coverage applies equally to uninsured coverage.

Section 1731(c.1) of the Motor Vehicle Financial Responsibility Law (the "MVFRL") reads as follows:

> **(c.1) Form of waiver.**—Insurers shall print the rejection forms required by subsections (b) and (c) on separate sheets in prominent type and location. The forms must be signed by the first named insured and dated to be valid. The signatures on the forms may be witnessed by an insurance agent or broker. **Any rejection form that does not specifically comply with this section is void. If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits. On policies in which either uninsured or underinsured coverage has been rejected, the policy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by uninsured or underinsured motorists.** Any person who executes a waiver under subsection (b) or (c) shall be precluded from claiming liability of any person based upon inadequate information.

75 Pa.C.S.A. § 1731(c.1) (emphasis added).

There is no question that Plaintiff signed a valid waiver of uninsured motorist benefits. Nor is there any doubt that Defendant failed to include notice of the absence of such coverage on Plaintiff's policy renewal forms, as required by § 1731(c.1). The only question is whether § 1731(c.1) provides, as a remedy for such failure, that the insured who has validly and admittedly waived such coverage should nevertheless be covered by operation of law.

The statute at first glance is unclear. The key phrases are highlighted above. Plaintiff's argument may be stated as follows: Section 1731(c.1) clearly obligates insurers to place prominent notice on renewal policies that such policies do not cover uninsured motorist liability. Defendant failed to do this. Therefore, the remedy provided in that section for failure to produce a valid rejection form, i.e. that "uninsured coverage ... under that policy shall be equal to the bodily injury liability limits," applies, and this section therefore provides Plaintiff with coverage.

Defendant reads the statute differently. Defendant admits that § 1731(c.1) requires insurance companies to provide prominent notice in renewal policies of the absence of uninsured motorist coverage. It also admits that it failed to do so in this case. However, Defendant denies that § 1731(c.1) provides any remedy for such failure. Rather, Defendant says, the notice requirement in this section is a regulatory provision, meant to be enforced by the Pennsylvania Insurance Department, and therefore it does not give rise to a private remedy. The remedy which this section does provide, it continues, is one specifically for failure to produce valid rejection of coverage forms, **not** for failure to comply with the notice requirement.

The question in this case is one of statutory interpretation. Plaintiff looks for his remedy in the following language: "Any rejection form that does not specifically comply with this section is void. If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage ... under that policy shall be equal to bodily injury liability limits." This language specifically refers to "rejection forms." Thus, the question is, what is a "rejection form," and, more specifically, do either renewal forms, or the notice of absence of coverage they are required to contain, constitute "rejection forms" and so fall within the scope of the provided remedy.

Section 1731(a) states, *inter alia*: "The named insured shall be informed that he may reject uninsured motorist coverage by signing the following written **rejection form**:" This is followed by the text required for initial waivers. 75 Pa.C.S.A. § 1731(a) (emphasis added). Section 1731(c.1) itself begins with the following sentence: "Insurers shall print the **rejection forms** required by subsections (b) and (c) on separate sheets in prominent type and location." 75 Pa.C.S.A. § 1731(c.1) (emphasis added). Subsections (b) and (c) provide only for the execution of initial waivers and say nothing about the notice requirement. Therefore, § 1731's reference to "rejection forms" is to the waiver forms to be signed by insured individuals

initially. Nowhere in this section is there any indication that either the renewal forms or the notice such forms are required to contain constitute "rejection forms," and in fact this makes a great deal of sense based upon a common sense definition of that term.

Since neither renewal forms nor their required notice are "rejection forms," they are not covered by the remedial provision of § 1731(c.1) by its plain language. It is also quite telling that the remedial provision, referring to "rejection forms," comes *after* the provisions stating requirements for these forms themselves, but *before* the requirement that notice be contained on renewal policies. This also tends to show that, by the plain language of the statute, the remedial provision refers to the former but not the latter.

While there is no controlling precedent in this case, the balance of what case law does address this issue supports this conclusion. The district court for the Middle District of Pennsylvania, Judge McClure presiding, faced a virtually identical situation in *Estate of Franks v. Allstate Insurance Co.*, 895 F.Supp. 77 (M.D.Pa.1995). There, as here, the plaintiff signed (what the court found to be) valid rejection forms at the outset of the policy, but was not reminded by the renewal form that the policy did not contain uninsured/underinsured motorist coverage. The court found that "[i]t [wa]s beyond dispute that defendant violated § 1731(c.1) in this respect." *Id.*, at 81.

The court then addressed the question of what remedy was available to the plaintiff for that violation. It held that there was none. It pointed out that "nowhere does the subsection provide that failure to print the renewal notice as described renders the rejection void, nor does it state that when the insurer fails to print the renewal notice as described, the insured is deemed to have uninsured or underinsured motorist coverage in any amount." *Id.*, at 82. It differentiated between the specific remedy provided for an invalid rejection form and the absence of such a remedy for an improper renewal notice. "The fact that the Pennsylvania legislature provided a specific remedy to the insured in one instance and, in the same subsection, failed to provide any reme-dy indicates an intent that no such remedy will exist." *Id.* I agree with and adopt Judge McClure's analysis of this issue.

Plaintiff cites two cases which it believes contradict the *Franks* holding. In *Erie v. Drawbaugh*, 108 York 95 (1994), a case from the York County Court of Common Pleas, uninsured and underinsured coverage was rejected. As in the instant case, it was undisputed that such rejections were valid, as they complied with the requirements of § 1731(c.1). Toward the end of the year-long term of the policy, the plaintiff was sent a letter giving her three options with regard to the approaching end of her policy term: (1) she could obtain coverage with another company; (2) she could renew her present policy; or (3) she could "[a]ccept this offer from Erie Insurance Group at the **Proposed New Policy Yearly Premium** shown above. To accept this offer you **MUST** remit the required 30% of this yearly premium to Erie Insurance Group ... along with a copy of this letter, in the envelope provided. Your renewal policy will be serviced by our nearest branch office." *Erie*, at 96. The plaintiff chose the third option. She signed the form and returned it, without signing any waiver.

The court concluded that "the 'conversion' from an assigned risk policyholder to a regular policyholder did result in the issuance of a new policy," and *not* a renewal policy, which had been clearly offered instead by option number two. Based upon this finding that a new policy had been issued, the court found that written rejections of uninsured and underinsured motorist coverage had to be obtained, and, since they were not, the insurance company was liable to the plaintiff for coverage up to the bodily injury liability limit of her policy.

*Erie* is therefore distinguishable from the instant case because there a *new* policy was found to have been purchased by the plaintiff, rather than a *renewal* of her old policy. However, the court went on to say in its dicta that, had it found that the policy was in fact a renewal of the plaintiff's earlier policy, its result would not have differed. Although the declaration page of the letter sent to the plaintiff stated the there was no unin-sured/underinsured coverage, the court found

this notice not to be "prominent," as required by § 1731(c.1). The court stated that it would have provided the same remedy. The court did not state its reasoning for finding the remedy of § 1731(c.1) to extend to renewal policies. Rather, it spoke in terms that seemed to assume that the remedy applied.

Defendant argues that this opinion, insofar as it addresses treatment of failure to provide prominent notice in renewal policies, is mere dicta. I agree. More importantly, the court did not thoroughly address this issue; rather, it simply assumed, without any consideration, that the remedy applied to improper renewal policies. For this reason, I do not weigh this dicta heavily, and do not find it persuasive precedent.

Plaintiff also points to *Lucas v. Progressive Casualty Insurance Company*, 451 Pa.Super. 492, 680 A.2d 873 (1996). There, as in this case, it was undisputed that the appellants signed rejections of both uninsured and underinsured motorist protection which contained the language required by § 1731(b) and (c). However, these rejections were printed on the same piece of paper, and so failed to comply with § 1731(c.1), which requires that rejections be printed on separate sheets. The court pointed to the provision which states "Any rejection form that does not specifically comply with this subsection is void" and also to the sentence that follows, "If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage ... under that policy shall be equal to the bodily injury liability limits." It held that, "since [the insurance company] failed to comply with § 1731, by statute, the insurer is required to provide appellants with underinsured (and uninsured) coverage equal to their bodily injury liability limits." *Lucas*, 680 A.2d at 877.

*Lucas* too is distinguishable from the instant case. The defect in *Lucas* made the waivers themselves invalid, whereas here there is no dispute that there was a valid initial waiver. Defendant's argument in this case is not based upon there being no remedy under § 1731(c.1) for execution of invalid initial waivers; clearly there is. Rather, Defendant argues that the remedy applies *only* to invalid initial waivers, and *not* to improper notice on renewal policies. *Lucas* shows only that there is a remedy for the former, which Defendant concedes.

Thus, the only case that is truly on point in the present action, *Franks*, supports my reading of the language of § 1731(c.1). However, Plaintiff argues that to construe the statute as I do renders the notice provision mere surplusage. I recognize that every provision of a statute is presumed to be intended for some purpose and may not be reduced by interpretation to mere surplusage. *Commonwealth v. Lobiondo*, 501 Pa. 599, 462 A.2d 662 (1983). However, as the court pointed out in *Franks*, under the MVFRL, authority is delegated to the Pennsylvania Insurance Department for administration and enforcement of those provisions of the MVFRL which concern matters under its jurisdiction.[2] 75 Pa.C.S.A. § 1704(b); *Franks*, at 82. The requirement regarding renewal notices constitutes a regulatory provision, to be enforced by the Insurance Department. The fact that it does not provide a remedy to private litigants does not render the provision mere surplusage.

Plaintiff also cites Pennsylvania law regarding statutory construction in an effort to persuade this Court that the remedial provision does in fact apply to renewal forms. He points to 1 Pa.C.S.A. § 1921(a), which states that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." *See also Motorists Insurance Companies v. Emig*, 444 Pa.Super. 524, 664 A.2d 559 (1995); *Lambert v. McClure*, 407 Pa.Super. 257, 595 A.2d 629 (1991). Plaintiff also cites the decisions of Pennsylvania courts which have held that the MVFRL is to be construed liberally in order to give effect to its objects, one of which is affording the injured plaintiff the greatest possible coverage. *Danko v. Erie Insurance Exchange*, 428 Pa.Super. 223, 630 A.2d 1219 (1993), aff'd 538 Pa. 572, 649 A.2d 935 (1994); *Sturkie v. Erie Insurance Group*, 407 Pa.Super. 117,

---

**2.** Those provisions of the law that are not under the jurisdiction of the Insurance Department are administered and enforced by the Department of Transportation. 75 Pa.C.S.A. § 1704(a).

595 A.2d 152 (1991).[3] Furthermore, Plaintiff contends that reading the statute as failing to provide a remedy in this situation would be absurd and unreasonable, and would therefore contravene 1 Pa.C.S.A. § 1922(1) (stating that the General Assembly does not intend a result that is absurd, impossible or execution or unreasonable). Finally, Plaintiff cites cases stating that, in close or doubtful insurance cases, the intent and language of insurance policies must be interpreted in favor of coverage for the insured. *Danko*, 630 A.2d at 1222. *Lambert*, 595 A.2d at 631.

While I give full credit to Plaintiff's arguments concerning statutory interpretation, such canons simply do not apply where the statutory language is clear. Here it is clear enough. This belief was implicit in the district court's decision in *Franks:* "the subsection provides a specific remedy for an invalid rejection form, but does not provide for a remedy for an improper renewal notice." *Franks,* at 82.

Based upon the fact that the plain language of the statute clearly requires it, and bolstered by the fact that the district court in *Franks,* the most factually similar and reasoned precedent available, has already so concluded, I conclude that the remedial provision of § 1731(c.1) does not supply a remedy to an individual for a failure to provide prominent notice of the absence of uninsured motorist coverage in a renewal policy. "Moreover, it is not the place of the courts to create a remedy when no remedy is provided within a statutory scheme, including a remedy by analogy to another provision of the statute." *Franks,* at 82. Therefore, an insured individual who has validly waived uninsured motorist liability coverage is not entitled to such coverage by operation of law where the notice requirement has been violated. Defendant's Motion for Summary Judgment is therefore granted.

---

**3.** While *Sturkie* did say this, it immediately followed that statement with the following: "However, we are not free to arbitrarily rewrite an insurance policy." *Sturkie v. Erie Insurance Group,* 407 Pa.Super. at 128, 595 A.2d at 157. The court in that case chose not to liberally construe the policy at issue to give the plaintiff greater coverage.