**ALLSTATE INSURANCE COMPANY,**
Appellant,

v.

**Albert J. DeMICHELE, Administrator**
**of the Estate of Joshua DeMichele,**
Appellee.

Superior Court of Pennsylvania.

Argued May 11, 2005.

Filed Nov. 14, 2005.

Reargument Denied Jan. 20, 2006.

David J. Obermeier, Pittsburgh, for appellant.

John W. Pollins, Greensburg, for appellee.

BEFORE: MUSMANNO, TODD, and BOWES, JJ.

OPINION BY TODD, J.:

¶ 1 In this declaratory judgment action, Allstate Insurance Company ("Allstate") appeals the order granting summary judgment in favor of Albert J. DeMichele, administrator of the estate of Joshua De-Michele. We reverse and remand for entry of summary judgment in favor of Allstate.

¶ 2 The trial court provided the following factual background of this case, based on the stipulation the parties prepared for purposes of their motions for summary judgment:

Albert J. DeMichele has been the named insured on the Allstate policy number 008–661–592 since at least September, 1990 and that [sic] he continuously remained the named insured from September, 1990 through the accident date of July 11, 2002 when his son, Joshua suffered fatal injuries. The person that caused the death of Joshua DeMichele on July 11, 2002, was negligent in causing that death and was uninsured at the time of the accident. On October 3, 1990 Albert J. DeMichele signed and dated a Rejection of Uninsured Motorists Protection form which tracked the language required by Section 1731 of the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL)[,] 75 Pa.C.S. § 1731. After October 3, 1990 through July 11, 2002 Albert J. DeMichele paid no premium for uninsured motorist coverage and did not apply for uninsured motorist coverage. Allstate is unable to produce a signed Section 1791 "Important Notice" dated October 3, 1990 or any other time. On July 11, 2002, the Allstate policy in question insured three vehicles owned by the named insured, Albert J. DeMichele, as set forth on the auto policy declaration pages as attached to Exhibit "A" to the Action for Declaratory Judgment.

(Decision and Order, 7/7/04, at 2; *see* Stipulation of Facts (Exhibit A to Allstate's Motion for Summary Judgment), at 1–2.)

¶ 3 Allstate filed this declaratory judgment action, and later a motion for summary judgment, asserting that the uninsured motorist ("UM") rejection form signed by DeMichele pursuant to 75 Pa. C.S.A. § 1731 precluded any claim for UM

benefits. Although DeMichele did not file a formal cross motion for summary judgment, but merely filed a brief entitled "Defendant's Brief for Declaratory Judgment", the parties agreed that the trial court could treat the matter as though there had been cross summary judgment motions. The trial court granted summary judgment in favor of DeMichele on July 7, 2004, concluding that, because Allstate could not show that DeMichele signed an "Important Notice"[1] pursuant to 75 Pa. C.S.A. § 1791, Allstate could not prove that DeMichele's UM waiver was knowing and intelligent. This appeal followed.

¶ 4 On appeal, Allstate presents the following questions for our review:

I. Is a properly signed and dated rejection of uninsured motorist coverage form under § 1731 of the [MVFRL] enforceable without proof that the insured signed an "Important Notice" form described in § 1791?

II. Does the trial court's refusal to enforce the properly signed and dated rejection of uninsured motorist coverage form promote the legislative concerns for cost containment under the [MVFRL]?

III. Does a factual issue prevent the granting of summary judgment where the stipulated facts do not address whether Allstate's business procedures can prove that they provided DeMichele with a § 1791 Important Notice form?

(Appellant's Brief at 4.)[2]

¶ 5 Our standard of review of an order granting or denying a motion for summary judgment is well established:

---

1. The stipulation states: "Allstate cannot produce a signed Section 1791 Important Notice dated October 3, 1990 or any other time." (Stipulation of Facts (Exhibit A to Allstate's

Motion for Summary Judgment), at ¶ 5 (R. 77a).)

2. Allstate also challenges DeMichele's assertion that Allstate has waived all of its claims

We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Pappas v. Asbel,* 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001) (citations omitted).

¶ 6 In this case, it is stipulated that DeMichele signed and dated a UM rejection form that tracked the language of Section 1731 of the MVFRL. It is also stipulated that Allstate cannot produce an "Important Notice" pursuant to Section 1791 signed by DeMichele. Allstate's first and second issue in this appeal, and the crux of the appeal as a whole, concern whether the latter failure precludes Allstate from enforcing the Section 1731 rejection. For the reasons stated below, we conclude that it does not.

¶ 7 The relevant sections of the MVFRL are as follows. Section 1731 provides, in relevant part:

## § 1731. Availability, scope and amount of coverage

**(a) Mandatory offering.**—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.

**(b) Uninsured motorist coverage.**— Uninsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of uninsured motor vehicles. The named insured shall be informed that he may reject uninsured motorist coverage by signing the following written rejection form:

### REJECTION OF UNINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting uninsured motorist coverage under

---

on appeal by failing to file post-trial motions. We reject DeMichele's argument in this regard. While DeMichele correctly notes that the rules of civil procedure require the filing of post-trial motions for declaratory judgments entered following *a trial, see Motorists Mut. Ins. Co. v. Pinkerton,* 574 Pa. 333, 342, 830 A.2d 958, 963 (2003) (clarifying that "where a trial court enters a declaratory order following a trial, parties must file post-trial motions from that order, as they would in any other civil proceeding, before the order may be deemed a final order for purposes of an appeal"), the declaratory judgment was entered in this case as a result of motions for summary judgment. Thus, no post-trial motions were required. *See Pinkerton,* 574 Pa. at 342, 830 A.2d at 963 ("where the trial court enters a declaratory order based on a pre-trial motion ... the parties are obviously not required to abide by the post-trial practice rules governing civil proceedings"). Indeed, we question DeMichele's ingenuousness on this point, as he cited *Pinkerton, supra,* in support of his argument, but failed to note the clear language within that same opinion rejecting his position.

this policy, for myself and all relatives residing in my household. Uninsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have any insurance to pay for losses and damages. I knowingly and voluntarily reject this coverage.

..................................
Signature of First Named Insured

..................................
Date

\* \* \*

(c) **Underinsured motorist coverage.**—Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles. The named insured shall be informed that he may reject underinsured motorist coverage by signing the following written rejection form:

### REJECTION OF UNDERINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

..................................
Signature of First Named Insured

..................................

Date

(c.1) **Form of waiver.**—Insurers shall print the rejection forms required by subsections (b) and (c) on separate sheets in prominent type and location. The forms must be signed by the first named insured and dated to be valid. The signatures on the forms may be witnessed by an insurance agent or broker. Any rejection form that does not specifically comply with this section is void. If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits. On policies in which either uninsured or underinsured coverage has been rejected, the policy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by uninsured or underinsured motorists. Any person who executes a waiver under subsection (b) or (c) shall be precluded from claiming liability of any person based upon inadequate information.

\* \* \*

75 Pa.C.S.A. § 1731. Section 1791 provides:

### § 1791. Notice of available benefits and limits

It shall be presumed that the insured has been advised of the benefits and limits available under this chapter provided the following notice in bold print of at least ten-point type is given to the applicant at the time of application for original coverage, and no other notice or rejection shall be required:

### IMPORTANT NOTICE

Insurance companies operating in the Commonwealth of Pennsylvania are

required by law to make available for purchase the following benefits for you, your spouse or other relatives or minors in your custody or in the custody of your relatives, residing in your household, occupants of your motor vehicle or persons struck by your motor vehicle:

(1) Medical benefits, up to at least $100,000.

(1.1) Extraordinary medical benefits, from $100,000 to $1,100,000 which may be offered in increments of $100,000.

(2) Income loss benefits, up to at least $2,500 per month up to a maximum benefit of at least $50,000.

(3) Accidental death benefits, up to at least $25,000.

(4) Funeral benefits, $2,500.

(5) As an alternative to paragraphs (1), (2), (3) and (4), a combination benefit, up to at least $177,500 of benefits in the aggregate or benefits payable up to three years from the date of the accident, whichever occurs first, subject to a limit on accidental death benefit of up to $25,000 and a limit on funeral benefit of $2,500, provided that nothing contained in this subsection shall be construed to limit, reduce, modify or change the provisions of section 1715(d) (relating to availability of adequate limits).

(6) Uninsured, underinsured and bodily injury liability coverage up to at least $100,000 because of injury to one person in any one accident and up to at least $300,000 because of injury to two or more persons in any one accident or, at the option of the insurer, up to at least $300,000 in a single limit for these coverages, except for policies issued under the Assigned Risk Plan. Also, at least $5,000 for damage to property of others in any one accident.

Additionally, insurers may offer higher benefit levels than those enumerated above as well as additional benefits. However, an insured may elect to purchase lower benefit levels than those enumerated above.

Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected.

If you have any questions or you do not understand all of the various options available to you, contact your agent or company.

If you do not understand any of the provisions contained in this notice, contact your agent or company before you sign.

75 Pa.C.S.A. § 1791.

¶ 8 Allstate asserts that its compliance with Section 1791 is immaterial to the issue of whether DeMichele waived UM coverage under Section 1731 and, accordingly, that DeMichele's UM waiver should be enforced. DeMichele asserts, on the other hand, that absent notice under Section 1791, his waiver under Section 1731 cannot be considered knowing and intelligent, and that his waiver is not valid as a result; therefore, he asserts that he is entitled to the remedy in subsection 1731(c.1) that provides that where an insurer fails to produce a valid rejection form, UM coverage shall be equal to the bodily injury liability limits.

¶ 9 The parties and the trial court cite, essentially, the same body of caselaw; they come to different conclusions, however. Based on our review of the applicable caselaw, we conclude that the relevant inquiry is whether Section 1791 provides a remedy for a failure to comply with its

directives. Because we conclude it does not, DeMichele cannot avoid enforcement of his Section 1731 UM rejection based on Allstate's failure to comply with the requirements of Section 1791.

¶ 10 We begin our analysis with a discussion of the relevant caselaw. In *Salazar v. Allstate Ins. Co.*, 549 Pa. 658, 702 A.2d 1038 (1997), the insured applied for coverage from Allstate, and rejected UM coverage. As in the instant case, Allstate complied with Section 1731. Unlike this case, however, the issue was its noncompliance with Section 1791.1, "Disclosure of premium charges and tort options," which requires the insurer to provide specific information concerning minimum coverage requirements and tort options to insureds at the time of a policy renewal. *See* 75 Pa.C.S.A. § 1791.1.[3] Citing Allstate's failure to comply with Section 1791.1, the insured sought UM benefits in spite of her UM waiver.

¶ 11 Although Allstate had complied with Section 1791, the Supreme Court rejected the analysis of this Court that com-pliance with that section superseded other requirements of the MVFRL, and in particular, Section 1791.1. *Id.* at 667, 702 A.2d at 1043. Nevertheless, the Court, while concluding that Sections 1731, 1791, and 1791.1 should be read *in pari materia*,[4] *id.* at 663, 702 A.2d at 1041, agreed with the analysis of the federal district courts in *Estate of Franks v. Allstate Ins. Co.*, 895 F.Supp. 77 (M.D.Pa.1995), and *Maksymiuk v. Maryland Cas. Ins. Co.*, 946 F.Supp. 379 (E.D.Pa.1996), that the key issue is whether there is a remedy for violation of Section 1791.1:

We find the analysis of whether there exists a remedy for an insurer's failure to comply with the requirements of section 1731(c.1) regarding renewal of insurance policies in *Franks* and *Maksymiuk* is equally persuasive as to an insurer's failure to comply with the requirements of section 1791.1 regarding the renewal of such policies. While we recognize that section 1791.1 requires that an insurer must provide specific information to the insured at the time of renewal, the legislature has not provid-

---

3. Section 1791.1, in part, states:

§ 1791.1. Disclosure of premium charges and tort options

(a) **Invoice.**—At the time of application for original coverage and every renewal thereafter, an insurer must provide to an insured an itemized invoice listing the minimum motor vehicle insurance coverage levels mandated by the Commonwealth and the premium charge for the insured to purchase the minimum mandated coverages. The invoice must contain the following notice in print of no less than ten-point type:

The laws of the Commonwealth of Pennsylvania, as enacted by the General Assembly, only require that you purchase liability and first-party medical benefit coverages. Any additional coverages or coverages in excess of the limits required by law are provided only at your request as enhancements to basic coverages.

The insurer shall provide the itemized invoice to the insured in conjunction with the declaration of coverage limits and premiums for the insured's existing coverages.

(b) **Notice of tort options.**—In addition to the invoice required under subsection (a), an insurer must, at the time of application for original coverage for private passenger motor vehicle insurance and every renewal thereafter, provide to an insured the following notice of the availability of two alternatives of full tort insurance and limited tort insurance described in section 1705(c) and (d) (relating to election of tort options):

\* \* \*

75 Pa.C.S.A. § 1791.1.

4. The Court explained: "Construing sections 1731, 1791, and 1791.1 in pari materia, it is apparent that the legislature intended that, before Ms. Brown made her decision, she would have all of the information regarding the scope and amount of coverage to purchase that the MVFRL requires Appellee to provide her." *Id.* at 663, 702 A.2d at 1041.

ed in the MVFRL any enforcement mechanism regarding this requirement. *Id.* at 670, 702 A.2d at 1044. As no remedy was provided for the failure to comply with Section 1791.1, the Court concluded that the insured could not avoid her UM rejection despite that failure.

¶ 12 This focus on the availability of a remedy, and a recognition that Section 1791 provides none, is made clear by two subsequent cases from this Court. In *Nationwide Mut. Ins. Co. v. Heintz*, 804 A.2d 1209 (Pa.Super.2002), this Court addressed the correlation between Section 1734 of the MVFRL and Section 1791. There, the insureds requested a reduction in their underinsured motorist ("UIM") benefits pursuant to Section 1734.[5] As in this case, it was conceded that there was no proof that the insureds had ever received notice pursuant to Section 1791. The insureds sought UIM benefits at their unreduced amounts, claiming this failure negated the knowingness of their reduction decision. Relying on *Salazar, supra,* we concluded the insureds were not entitled to relief:

> *Salazar* is the closest case to the case before us. While *Salazar* did not address § 1734 or § 1791, it did address § 1791.1, which contains notice provisions similar to those found in § 1791....
>
> Appellant argues that there is no remedy for an insurer's failure to comply with § 1791. In *Tukovits* [*v. Prudential Ins. Co. of America,* 448 Pa.Super. 540, 672 A.2d 786 (1996) ], this Court held that the remedy for an unknowing or involuntary reduction of UM/UIM coverage under § 1734 was to raise UM/UIM coverage to the limits of bodily injury

coverage. *Tukovits,* 672 A.2d at 791. *Salazar* compels us to conclude that our Supreme Court effectively overruled *Tukovits* and changed the analysis to focus on one question: namely, whether the MVFRL expressly provided for such a remedy. *Salazar,* 702 A.2d at 1044. Our review of the MVFRL reveals no express remedy for a violation of § 1791. Thus, the Heintzes are not entitled to a remedy for Appellant's failure to provide notice under § 1791.

*Heintz,* 804 A.2d at 1219–20 (footnote omitted).

¶ 13 Similarly, in *Kline v. Old Guard Ins. Co.,* 820 A.2d 783 (Pa.Super.2003), we refused to find UIM coverage where the insureds had waived such coverage pursuant to Section 1731, but had failed to read or sign the Section 1791 notice appearing on the reverse side of the waiver. We noted that, after *Salazar* and *Heintz,* "we may no longer participate in an analysis of whether the insured had 'knowingly and intelligently' waived UIM protection, *even where the parties had stipulated that the insured had not received the Important Notice mandated by section 1791.*" *Id.* at 787 (emphasis original). We commented that we would not reform an insurance contract to provide UIM coverage to insureds who had rejected such coverage and who had, as a result, paid lower premiums for lesser benefits, adding that allowing and enforcing such waivers, which reduce an insured's total insurance premium, furthered one of the main policy goals of the MVFRL—namely, lowering the cost of motor vehicle insurance. *Id.* at 787–88. We concluded that, based on the relevant caselaw, "even if there were a violation of

---

5. Section 1734 provides:

   **§ 1734. Request for lower limits of coverage**

   A named insured may request in writing the issuance of coverages under section 1731

(relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury. 75 Pa.C.S.A. § 1734.

§ 1791's notice requirement, the MVFRL does not provide a remedy, and the courts are not free to create one." *Id.* at 788 (citing cases).[6]

¶ 14 In this case, it undisputed that De-Michele executed a waiver of UM coverage pursuant to Section 1731. Although Allstate cannot prove that DeMichele received a Section 1791 notice, in accordance with the caselaw discussed above, and particularly *Kline,* we are constrained to conclude that there is no remedy for this failure, and that we may not reform De-Michele's policy to provide UM benefits contrary to the express effect of his UM waiver.[7]

¶ 15 Accordingly, we are constrained to conclude that the trial court erred in granting summary judgment to DeMichele on this basis. We note, as we have in other cases, that any apparent harshness in this result, which forecloses coverage for DeMichele's son's tragic death, is tempered by the fact that, for many years, DeMichele paid no premium for UM benefits; reforming the Allstate policy after the fact as DeMichele seeks would contravene the cost containment policy of the MVFRL, and force Allstate to pass along uncompensated costs to other insureds. *See, e.g., Heintz,* 804 A.2d at 1220.

¶ 16 We also reject DeMichele's additional claim, briefly addressed in a footnote in his brief, that the trial court's opinion can be affirmed on the alternative basis

that DeMichele's policy endorsements indicated with inadequate prominence that UM coverage had been rejected, in alleged contravention of Section 1731(c.1), which requires that, where an insured has rejected UM/UIM coverage, policy renewals must contain notice in prominent type that the policy does not provide such protection. (Appellee's Brief, at 7 n. 5.) The trial court never addressed this argument, nor was it an apparent focus of the stipulation of the parties that formed the basis for their motions for summary judgment.

■ ¶ 17 Initially, we note that the policy declarations attached to Allstate's complaint do indicate the DeMichele had rejected UM coverage, in type font size similar to the rest of the policy. (*See* Policy (Exhibit A to Action for Declaratory Judgment), at 7 (R.R. 16a).) Moreover, whether the statement in the policy is sufficiently prominent in accordance with subsection 1731(c.1), we find that, in accord with the caselaw discussed above, there is no remedy for violating the notice provision in subsection 1731(c.1).

¶ 18 This subsection provides:

Insurers shall print the rejection forms required by subsections (b) and (c) on separate sheets in prominent type and location. The forms must be signed by the first named insured and dated to be valid. The signatures on the forms may be witnessed by an insurance agent or broker. Any rejection form that does

---

**6.** DeMichele's reliance on *National Union Fire Ins. Co. v. Irex Corp.,* 713 A.2d 1145 (Pa.Super.1998) is misplaced. There, this Court, in a decision which predates *Heintz* and *Kline,* and which fails to discuss *Salazar,* did not fully analyze the distinct effect of the insurer's failure to comply with Section 1791, as the insurer had not complied with Section 1731. We stated:

> Without an effective section 1731 waiver specifically rejecting the statutory limits of UM/UIM coverage, one may not apply the conclusive presumption of section 1791 no-

tice. Therefore, even if National Union had supplied Irex with the requisite section 1791 notice, our decision would remain-no valid waiver or reduction of UM benefits occurred.

*Id.* at 1155 (citations omitted). As a result, we do not find the analysis in *Irex* to be instructive herein.

**7.** While *Kline* concerned UIM coverage, the analysis therein applies with equal force to UM coverage, which is at issue in this case.

not specifically comply with this section is void. If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits. *On policies in which either uninsured or underinsured coverage has been rejected, the policy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by uninsured or underinsured motorists.* Any person who executes a waiver under subsection (b) or (c) shall be precluded from claiming liability of any person based upon inadequate information.

75 Pa.C.S.A. § 1731(c.1) (emphasis added).

¶ 19 We agree with the analysis of the federal district court in *Maksymiuk, supra,* that there is no remedy for violating the prominent notice requirement on which DeMichele relies. The court cogently concluded that the only remedy provided in this subsection (i.e., imposing UM/UIM limits which equal bodily injury limits) applies only when an insurer fails to provide a valid rejection form, and does not apply to the notice requirement, which is described later in the text of the statute:

> Since neither renewal forms nor their required notice are "rejection forms," they are not covered by the remedial provision of § 1731(c.1) by its plain language. It is also quite telling that the remedial provision, referring to "rejection forms," comes *after* the provisions stating requirements for these forms themselves, but *before* the requirement that notice be contained on renewal policies. This also tends to show that, by the plain language of the statute, the remedial provision refers to the former but not the latter.

*Maksymiuk,* 946 F.Supp. at 382 (emphasis original). The court concluded that the notice provision would be enforceable, as a regulatory provision, by the Pennsylvania Insurance Department, but the notice provision "does not supply a remedy to an individual for a failure to provide prominent notice of the absence of uninsured motorist coverage in a renewal policy", and that the courts were not free to create a remedy where none was provided by statute. *Id.* at 384.

¶ 20 We agree, and note that this analysis was discussed at length and approved by our Supreme Court in *Salazar, supra,* in its resolution of a similar issue with respect to Section 1791.1. *See Salazar,* 702 A.2d at 1044 ("We find the analysis of whether there exists a remedy for an insurer's failure to comply with the requirements of section 1731(c.1) regarding renewal of insurance policies in … *Maksymiuk* is equally persuasive as to an insurer's failure to comply with the requirements of section 1791.1 regarding the renewal of such policies."). Accordingly, we find that DeMichele is not entitled to the grant of summary judgment on this basis either.

¶ 21 Given that we have rejected the arguments proffered by DeMichele for avoiding the effect of his waiver of UM coverage, we conclude that summary judgment should have been entered in favor of Allstate in its declaratory judgment action.[8] We thus reverse the order of the trial court below, and remand with instructions that the trial court enter summary judgment in favor of Allstate.

¶ 22 Order **REVERSED.** Case **REMANDED** for entry of an order granting summary judgment in favor of Allstate. Jurisdiction **RELINQUISHED.**

---

**8.** As a result of our disposition, we need not   address Allstate's third issue on appeal.