**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2449
_____

NATHAN KEELER;
COURTNEY KEELER,
husband and wife,
Appellants
v.

ESURANCE INSURANCE SERVICES, INC., individually trading and doing business
as ESURANCE INSURANCE COMPANY, ESURANCE, and/or ESURANCE, INC.;
ESURANCE INSURANCE COMPANY, individually trading and doing business as
ESURANCE INSURANCE SERVICES, INC., ESURANCE, and/or ESURANCE, INC.;
ESURANCE, individually trading and doing business as ESURANCE INSURANCE
SERVICES, INC., ESURANCE INSURANCE COMPANY and/or ESURANCE, INC.;
ESURANCE INC., individually trading and doing business as ESURANCE
INSURANCE SERVICES, INC., ESURANCE INSURANCE COMPANY, and/or
ESURANCE
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-20-cv-00271)
District Judge:  Honorable Mark R. Hornak
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 30, 2022
_____

Before:  JORDAN, PORTER, and PHIPPS, *Circuit Judges*.

(Filed:  October 18, 2022)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not
constitute binding precedent.

PHIPPS, *Circuit Judge*.

This case involves a claim for underinsured motorist ('UIM') compensation related to a collision between a motorcycle and an SUV.  The motorcyclist's injuries exceeded the SUV driver's insurance coverage limit, so the motorcyclist and his wife sought UIM benefits from their own insurance company.  But when they originally purchased their policy, they waived UIM coverage, and on that basis, the insurance company refused to pay.  The couple believed that the waiver could not be enforced, and they sued their insurance company for the UIM benefits and for bad-faith denial.  The District Court granted summary judgment in favor of the insurer, and the couple appealed.  On *de novo* review, we will affirm the District Court's judgment.

## BACKGROUND

While Nathan Keeler, a citizen of Pennsylvania, was riding his motorcycle on a state route in Allegheny County, Pennsylvania, on June 6, 2019, an SUV pulled out of an intersection and obstructed his lane.  That caused Keeler's motorcycle to collide with the driver's side of the car.  As a result of the crash, Keeler suffered several fractures and lacerations, as well as a concussion leading to a loss of consciousness.

The driver of the SUV was solely at fault for the crash.  Her insurer settled Keeler's claim for the policy's bodily injury liability limit of $300,000.

But Keeler claimed injuries in excess of that amount.  Specifically, Keeler and his wife, also a citizen of Pennsylvania, sought an additional $100,000 in UIM compensation from their policy with Esurance Insurance Services, Inc.

Esurance denied the Keelers' claim.  It explained that in purchasing insurance, Keeler signed a rejection form waiving UIM coverage, and consistent with that waiver, the Keelers never paid the extra premiums.

2

The Keelers then sued various Esurance-affiliated entities, each headquartered and incorporated outside of Pennsylvania, in the Court of Common Pleas of Allegheny County. They claimed breach of contract and bad faith denial of insurance coverage, seeking damages exceeding $75,000. Invoking diversity jurisdiction, Esurance removed the case to the United States District Court for the Western District of Pennsylvania. *See* 28 U.S.C. §§ 1332, 1441(a).

There, after discovery, the parties cross-moved for summary judgment. Esurance maintained that it had properly denied the Keelers' request for UIM benefits based on the waiver Keeler signed. The Keelers countered that the waiver was void because Esurance failed to print it in a "prominent type and location" as required by Pennsylvania law. 75 Pa. Cons. Stat. § 1731(c.1).[1] They also contended that the waiver was ineffective because Esurance's renewal notices failed to notify them that their policy lacked UIM protection, as also required by Pennsylvania law. *See id.* In rejecting both arguments, the District Court held that the UIM rejection form satisfies the prominent-type-and-location requirement and that violations of the renewal notice provision are not remediable through a civil action.

---

[1] In full, the operative version of § 1731(c.1) consists of the following text:

> **Form of waiver.**--Insurers shall print the rejection forms required by subsections (b) and (c) on separate sheets in prominent type and location. The forms must be signed by the first named insured and dated to be valid. The signatures on the forms may be witnessed by an insurance agent or broker. Any rejection form that does not specifically comply with this section is void. If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits. On policies in which either uninsured or underinsured coverage has been rejected, the policy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by uninsured or underinsured motorists. Any person who executes a waiver under subsection (b) or (c) shall be precluded from claiming liability of any person based upon inadequate information.

The Keelers timely appealed the entry of summary judgment in Esurance's favor, and that brought this matter within this Court's appellate jurisdiction. *See* 28 U.S.C. § 1291.

**DISCUSSION**

### I. The Rejection Form Satisfies the Prominent-Type-and-Location Requirement.

Under Pennsylvania law, which the parties agree governs this dispute, insurance providers must offer UIM coverage with every motor vehicle liability policy. *See* 75 Pa. Cons. Stat. § 1731(a). Although UIM protection is optional, an insurance purchaser who does not want such coverage must expressly waive it by signing a rejection form provided by the insurer. *See id.* By statute, Pennsylvania imposes several requirements for UIM rejection forms, including the precise text for the form. *See id.* § 1731(c) (specifying the precise text of the waiver); *id.* § 1731(c.1) (requiring that the waiver "be signed by the first named insured and dated"). In addition, Pennsylvania requires insurers to print rejection forms in a "prominent type and location" on the page. *Id.* § 1731(c.1). A rejection form that fails to comply with these requirements is void. *See id.*

Here, the Keelers argue that Esurance's UIM rejection form is void because the waiver is not printed in a prominent type and location. That argument lacks merit.

The rejection form satisfies the prominent-type-and-location requirement. It is included on a separate document from the policy itself, and that document is organized by subject matter, with the waiver in its own section in a readable sized font, set off by a title that is bold, underlined, and printed in all capital letters. At the top center, the form displays its title in bold, all-capital letters:

4

**PENNSYLVANIA**
**UNDERINSURED MOTORIST COVERAGE SELECTION/REJECTION**

App. 88. Beneath that title is a single-spaced paragraph explaining that UIM insurance is optional, but that it will be included in the policy unless waived. Next, the document provides a section for selection of UIM coverage that includes the ability to seek UIM coverage in an amount less than the statutory default (the limit for bodily injury coverage). Underneath those two sections, about a third of the way down the page, the form contains the statutorily required text of the waiver. That waiver is distanced from the previous section by a line space, and it uses a bold, underlined, and capitalized title:

**<u>REJECTION OF UNDERINSURED MOTORIST PROTECTION</u>**.

App. 88. Below the text of the waiver, the form includes a signature line and date, which Keeler completed on May 10, 2017. A section related to stacking coverage follows. And below that section is an acknowledgement that the coverage selection on the form will apply to all future policy renewals. Keeler also signed and dated that acknowledgment.

That logical grouping of topics, each set off by line spaces, along with the separately titled section for the UIM waiver satisfies the prominent-type-and-location requirement. *See Lewis v. Erie Ins. Exch.*, 793 A.2d 143, 154 n.16 (Pa. 2002) (describing as "prominent" an insurance form's "typefacing, blocking, and subject-matter groupings"); *Smith v. Hartford Ins. Co.*, 849 A.2d 277, 279–80 (Pa. Super. Ct. 2004) (holding that the prominence requirement was satisfied when the waiver was printed in a "clearly legible" type, "located on the center of the page," and had a title "in all capital letters"). The presence of other content on the same sheet does not, by itself, negate the prominence of the waiver. *See Winslow-Quattlebaum v. Md. Ins. Grp.*, 752 A.2d 878, 881 (Pa. 2000) ("Were the UIM waiver the only information on the page, 'prominent type and location' would be meaningless, and of course unnecessary . . . ."). Nor is there a

5

basis to interpret the prominence requirement as compelling the use of a different color or font size for the waiver or its title; those features might add to the prominence of a waiver, but they are not required. Accordingly, Esurance's UIM rejection form satisfies the prominent-type-and-location requirement.

## II. Pennsylvania Law Does Not Provide a Civil Remedy for Esurance's Defective Renewal Notice.

Pennsylvania also imposes a prominence requirement for renewal forms for vehicle insurance policies that have opted out of UIM coverage. *See* 75 Pa. Cons. Stat. § 1731(c.1) ("[P]olicy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by . . . underinsured motorists."). It is undisputed that Esurance's renewal notices did not comply with that requirement: those notices failed to indicate that the Keelers' policy excluded UIM coverage.

The Keelers argue that this conceded violation of the renewal notice provision voids their initial waiver of UIM coverage. But the statute does not go that far. Although it provides that any deficiency in the *rejection form* voids the UIM waiver, the statute does not identify any consequence for deficiencies in *renewal forms*. *See id.* ("Any rejection form that does not specifically comply with this section is void."); *Allstate Ins. Co. v. DeMichele*, 888 A.2d 834, 842 (Pa. Super. Ct. 2005) (explaining that § 1731(c.1)'s remedial provision "applies only when an insurer fails to provide a valid rejection form, and does not apply to the [renewal] notice requirement"). Nor does statutory context provide a basis for inferring such a remedy. The inclusion of that specific remedy for a defective rejection form, but not for defective renewal notices, indicates that the legislature knew how to void UIM waivers and elected against doing so for deficiencies in renewal notices. *Cf. Salazar v. Allstate Ins. Co.*, 702 A.2d 1038, 1044 (Pa. 1997) (reading the notice requirements of §§ 1731 and 1791.1 *in pari materia* and holding that

6

there is no remedy for an insurer's violation of the latter provision); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107–08 (2012) (describing the negative-implication canon). And that lack of a civil remedy does not necessarily render superfluous the requirements for the renewal notices; in regulating insurance companies, the Pennsylvania Insurance Department may consider such violations. *See* 75 Pa. Cons. Stat. § 1704(b) (delegating enforcement authority to the Insurance Department); *DeMichele*, 888 A.2d at 842 (agreeing "that the notice provision would be enforceable, as a regulatory provision, by the Pennsylvania Insurance Department"). For these reasons, Esurance's violation of the renewal notice provision does not affect the validity of Keeler's UIM waiver.

## CONCLUSION

Because the Keelers' waiver of UIM coverage is not void, the District Court did not err in rejecting their breach-of-contract and bad-faith claims. *See Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 374, 377 (Pa. 2017) (holding that a plaintiff cannot prevail on a bad faith insurance claim unless their insurer lacked "a reasonable basis for denying benefits under the policy").